UNITED STATES of America,
Plaintiff-Appellee,

v.

Eddie HODGE and Nathaniel Robertson,
Defendants-Appellants.

Nos. 75–2484, 75–2485.

United States Court of Appeals,
Sixth Circuit.

Argued April 6, 1976.

Decided July 23, 1976.

Rehearing and Rehearing En Banc
Denied Sept. 3, 1976.

Milton R. Henry, Henry, Smith, Sabbath & Dillard, P. C., Detroit, Mich., for defendants-appellants.

Ralph B. Guy, Jr., U. S. Atty., Robert D. Sharp, F. William Soisson, Detroit, Mich., for plaintiff-appellee.

Before CELEBREZZE, MILLER[*] and LIVELY, Circuit Judges.

CELEBREZZE, Circuit Judge.

Appellants were convicted by a jury in the District Court for the Southern District of Michigan of conspiring to distribute heroin in violation of 21 U.S.C. § 846 (1970) and of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (1970). They were sentenced to serve eight years in the custody of the Attorney General with a five year special parole term under 18 U.S.C. § 4208(a)(2) (1970).

Appellants jointly raise two issues in challenging their convictions, and Appellant Hodge raises a third in contesting his conviction. Appellants first argue that evidence seized at a residence at 18990 Rosemont in Detroit should be suppressed because sufficient information to support the issuance of the search warrant was not presented to the magistrate. Appellants also argue that the District Court erred in denying their motion to suppress recorded telephone conversations between John Mondaine, a Government informant, and Appellant Hodge. Appellants claim that admission of the conversations into evidence vio-

lated the Fourth and Fifth Amendments of the United States Constitution, the search and seizure provision of the Michigan Constitution and federal wiretap statutes, 47 U.S.C. § 605 (1970), and 18 U.S.C. § 2511 (1970). Additionally, Appellant Hodge contends that his conviction must be overturned because the District Court failed to give his requested entrapment instruction.

A review of the record indicates that John Mondaine volunteered to become an informant for the Drug Enforcement Agency (DEA) following his arrest for possession of heroin. Mondaine advised DEA agents that he could arrange for the sale of a large quantity of heroin by Hodge, to whom he was related by marriage. On December 7, 1973, Mondaine placed two telephone calls to Hodge in Detroit which were recorded by Special Agent Ryan in the Kansas City office of the DEA. During the second conversation, Mondaine indicated that he was interested in purchasing a pound of heroin. He discussed with Hodge the method of measuring the drug and the quality and price of the heroin. Mondaine indicated to Hodge that he would be in Detroit on the evening of December 13th and was assured that he would be able to purchase the heroin and leave by 12:00 p. m. the following afternoon.

On December 12th, Mondaine again called Hodge relative to the purchase of the pound of heroin. The conversation was similarly recorded in the DEA office in Kansas City by Special Agent Ryan. Mondaine indicated that he had an airplane reservation and could get out of Kansas City the following day. He threatened, however, to cancel the transaction if it was going to be delayed. Hodge assured Mondaine that he would not have to wait around because his man had a "system".[1] They agreed that the transaction would occur at approximately 4:00 a. m., on December 14th.

At 5:30 p. m. on December 13th, Hodge arrived at Detroit Metropolitan Airport to

---

[*] The Honorable William E. Miller died on April 12, 1976, and did not participate in this opinion.

1. Government Appendix at 11b.

meet Mondaine. They went to an airport locker where Hodge was shown a "flash roll"[2] of $19,500 that had been provided by the DEA. Leaving the money in the locker, both men exited the airport.

After numerous stops that evening, Mondaine and Hodge arrived at Stafford's Restaurant in Detroit at 10:40 p. m. According to Mondaine, Hodge indicated that he was leaving the restaurant to obtain a sample of heroin which Mondaine had requested.[3] DEA agents observed Hodge drive directly from the restaurant to 18990 Rosemont, the residence of Appellant Robertson. Hodge was observed to enter the residence, remain briefly, and then depart at 11:15 p. m. Agents maintained a surveillance of Hodge as he drove directly back to Stafford's. Mondaine testified that upon Hodge's return, they went to Hodge's car where Mondaine was handed a "sample"[4] which he smelled and purportedly knew to be heroin. Hodge then drove Mondaine to his wife's residence on Richton Avenue. Mondaine testified that Hodge called him there later that night and inquired about the sample. Mondaine reported that he advised Hodge that the heroin was "nice"[5] and was then told that the transaction would occur at 5:30 a. m.

Early the following morning, Hodge picked Mondaine up at the Richton residence. Mondaine testified that he was handed a ball of heroin in Hodge's car. He reportedly insisted that the heroin be measured and was driven to an unknown location by Hodge. Mondaine claimed that he was introduced to Robertson who measured the heroin, found it to be short and reduced the price. Mondaine testified that he and Hodge then left for the airport. Upon their arrival at the airport, Mondaine reported that he left the ball of heroin in Hodge's car and went inside. He gave a pre-arranged signal to DEA agents who converged upon the car, seized the heroin and arrested Hodge.

Following Hodge's arrest, Mondaine was debriefed by DEA agents. From this information and the reports received through surveillance by DEA agents, authorities obtained a search warrant for Robertson's Rosemont residence. Seized during the execution of the warrant were various items of evidence which were admitted during the trial, including three plastic bags having water residue and traces of heroin, a photograph of Appellants, various checks and a quantity of money.

In a memorandum opinion, the District Court denied Appellant's motion for suppression of evidence seized from the Rosemont residence, holding that the affidavit upon which the warrant was issued was sufficient. The affidavit was made and submitted to a United States Magistrate on December 14, 1973, by Melvin Smith, Special Agent for the DEA, who stated that he had reason to believe that approximately one pound of heroin was being stored at 18990 Rosemont. The grounds for this belief were set forth in detail in the affidavit.[6]

---

**2.** Government Appendix at 29b.

**3.** Hodge contravened Mondaine's testimony concerning the events subsequent to the airport departure and denied providing him with any sample of heroin. However, we must view the evidence and the reasonable inferences therefrom in the light most favorable to the Government in an appeal from a criminal conviction, *United States v. Beck,* 511 F.2d 997, 1003 (6th Cir. 1975).

**4.** Government Appendix at 55b.

**5.** Government Appendix at 58b.

**6.**                   AFFIDAVIT

Melvin Smith, Special Agent, Drug Enforcement Administration, United States Department of Justice, Detroit, Michigan, being duly sworn states:

(1) That on various occasions [within 3 months] a confidential informant of the Drug Enforcement Administration has advised that the informant has purchased various quantities of heroin from an individual known to the informant as EDWARD HODGE;

(2) That the confidential informant has advised that EDWARD HODGE deals in substantial quantities of heroin and that the informant has personally purchased ½ pound quantities of heroin from EDWARD HODGE;

(3) That the confidential informant has a history of proven reliability with the Drug Enforcement Administration and has been instrumental in providing reliable information in at least three (3) Federal Criminal cases;

■ Although the question of the sufficiency of facts to support the issuance of the warrant was submitted by Appellants in their joint brief,[7] only Robertson has standing to raise the issue. Fourth Amendment rights are personal rights which may not be vicariously asserted. *Simmons v. United States,* 390 U.S. 377, 389, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In order to qualify as a person aggrieved by an unlawful search and seizure, one must have been a victim of the search—one against whom the search was directed—as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search directed at another. *Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1969). Co-conspirators and co-defendants have been accorded no special standing. *Alderman v. United States,* 394 U.S. 165, 172, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). There is no standing to contest a search and seizure where, as here, the defendant, Hodge, was neither: (a) on the premises at the time of the contested search and seizure; nor (b) alleged a proprietary or possessory interest in the premises; nor (c) was charged with an offense that includes, as an essential element, possession of the seized evidence at the time of the contested search and seizure. *Brown v. United States,* 411 U.S. 223, 229, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1972).

■ While a warrant may issue only upon a finding of probable cause, the Su-

(4) That the aforesaid confidential informant has advised that quantities of heroin are maintained by EDWARD HODGE or his girl friend prior to the completion of the transaction for the heroin;

(5) That the aforesaid confidential informant has indicated that it is EDWARD HODGE's procedure to see the purchaser's money prior to arranging for the delivery of the quantity of heroin to be purchased and that delivery occurs only after EDWARD HODGE goes to his source of supply or "stash pad" to obtain the quantity of heroin to be purchased;

(6) On December 13, 1973 at approximately 10:40 p. m. EDWARD HODGE drove the confidential informant to Stafford's Restaurant, Seven Mile Road, Detroit, Michigan.

(7) On December 13, 1973, EDWARD HODGE advised the confidential informant that he, HODGE, was going to pick up a "sample" quantity of heroin;

(8) On December 13, 1973, at approximately 10:50 p. m., EDWARD HODGE left the aforesaid informant at Stafford's Restaurant, Seven Mile Road, Detroit, Michigan;

(9) On December 13, 1973, at approximately 10:52 p. m., special agents of the Drug Enforcement Administration followed EDWARD HODGE from Stafford's Restaurant, Seven Mile Road, to 18990 Rosemont, Detroit, Michigan, and observed HODGE enter and exit the residence at approximately 11:15 p. m.;

(10) On December 13, 1973, at approximately 11:20 p. m., EDWARD HODGE left the 18990 Rosemont address and returned to Stafford's Restaurant, Seven Mile Road, Detroit, Michigan;

(11) On the same date, the confidential informant advised that EDWARD HODGE delivered to the informant a quantity of heroin, approximately 1.5 grams, as a "sample" of the quality of heroin to be delivered by HODGE;

(12) The confidential informant further advised that EDWARD HODGE indicated that he had gone directly to his source to obtain the "sample";

(13) On December 14, 1973, the confidential informant advised that EDWARD HODGE stated that he could sell additional quantities of heroin to the informant on short notice;

(14) The confidential informant further advised that EDWARD HODGE stated that he, HODGE, had an additional pound of heroin available for delivery on the morning of December 14, 1973;

(15) At approximately 6:30 a. m., on December 14, 1973, EDWARD HODGE telephoned the confidential informant and indicated that he, HODGE, had a pound of heroin for immediate delivery and that the quantity to be delivered was the same quality as the sample previously delivered on December 13, 1973, as it was from the same source;

(16) On December 14, 1973, at approximately 6:45 a. m., EDWARD HODGE delivered a pound of heroin to the confidential informant while they were in a 1974 Cadillac Fleetwood, Michigan License No. 6747EN;

(17) On December 14, 1973, at approximately 7:45 a. m., special agents of the Drug Enforcement Administration arrested EDWARD HODGE at Metropolitan Airport and seized from the aforesaid Cadillac Fleetwood approximately 486.2 grams of the substance purported to be heroin;

(18) On December 14, 1973, an agent of the Drug Enforcement Administration performed a field test on the aforesaid substance and received a positive reaction for heroin.

7. Appellant's brief at 22.

preme Court has long held that probable cause means less than evidence which would justify condemnation [8] and that a finding of probable cause may rest upon evidence which is not legally competent in a criminal trial.[9] As the Court noted in *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949):

> In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

■ In accordance with this view, the Court has determined that affidavits for search warrants must be tested by both magistrates and courts in a commonsense and realistic manner. *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1964). In explaining the rationale for this determination, the Court in *Ventresca, supra* at 109, 85 S.Ct. at 746, declared:

> [affidavits] are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity which once existed under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

> This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informant's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. . . . However, where these circumstances are detailed, where reason for crediting the source of

the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner.

■ We agree with the District Court's determination that there was probable cause to believe that drugs were stored on the Rosemont premises. The magistrate, upon a commonsense reading of the affidavit, could reasonably determine that: 1) a confidential informant (Mondaine) of proven reliability had advised the DEA that Hodge dealt in substantial quantities of heroin; 2) it was Hodge's procedure to inspect the purchaser's money and then go to his source to obtain the drugs; 3) at a restaurant, Hodge informed Mondaine that he was going to get a sample of heroin; 4) a DEA agent followed Hodge to the address on the warrant and then back to the restaurant; 5) Hodge gave the sample to Mondaine indicating that he had gone directly to his source to obtain it and that it was of the quality of heroin Hodge would deliver; and 6) Hodge told Mondaine that he had one pound of heroin available for immediate delivery and could sell him additional quantities on short notice.

Robertson notes that the affidavit contains no averment that the heroin was seen at ·or obtained from the Rosemont residence. He argues that Hodge made many stops on the night he purportedly transferred the sample to Mondaine, yet the affidavit fails to state that Hodge could not have obtained the drugs elsewhere. In view, however, of Hodge's statements upon leaving the restaurant [10] and upon his return [11] and of the DEA surveillance reports tracking Hodge between Stafford's Restaurant and the Rosemont residence,[12] there was probable cause to believe that a quantity of heroin would be found at the Rosemont residence.

---

**8.** *Locke v. United States,* 7 Cranch (11 U.S) 339, 348, 3 L.Ed. 364 (1813).

**9.** *Draper v. United States,* 358 U.S. 307, 311, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). ·

**10.** Paragraph 7 of the affidavit.

**11.** Paragraph 12 of the affidavit.

**12.** Paragraphs 9 and 10 of the affidavit.

Robertson additionally contends that the affidavit failed to substantiate the quantity of drugs detailed in the warrant. Robertson notes that paragraph 14 of the affidavit indicated that upon delivery of the sample Hodge told Mondaine that an additional pound of heroin was available. As one pound of heroin was seized in Hodge's car upon his arrest, Robertson claims no averment remained to support the belief that another pound of the narcotic was stored at the Rosemont residence. This argument overlooks paragraph 13 of the affidavit which indicates that Hodge stated that he could obtain additional quantities of heroin on short notice and paragraph one in which Hodge is identified as a large dealer in drugs. These paragraphs, under common-sense interpretation, provided the magistrate with probable cause to believe that heroin was present at the Rosemont address subsequent to Hodge's arrest.

Although much of the material in the affidavit is based on the hearsay statements of Mondaine, there is substantial basis for crediting that hearsay. *United States v. Harris,* 403 U.S. 573, 580–81, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Mondaine's credibility is detailed in the warrant [13] and corroboration for portions of his narrative is supplied by DEA agents.

■ Robertson next argues that the warrant should be struck as a product of "tailoring", citing *United States v. Upshaw,* 448 F.2d 1218 (5th Cir. 1971), *cert. den.* 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810 (1972). Robertson claims that there was a calculated omission of facts material to probable cause in order to perpetrate a fraud on the court. We can discover no such intentional omission and therefore find Robertson's argument to be without merit.

■ We turn to consideration of Appellants' second argument, that recordings of telephone conversations between Mondaine and Hodge were improperly admitted into evidence below. A person may challenge government evidence on the ground that it

was seized by electronic surveillance violative of his Fourth Amendment right to be free of unreasonable searches and seizures if the person was a party to the conversation or if the interception occurred on the person's premises, regardless of whether he participated in the conversation. *Alderman v. United States,* 394 U.S. 165, 176, 89 S.Ct. 961, 22 L.Ed.2d 176 (1968). Robertson, therefore, lacks standing to argue that the tapes of conversations between Hodge and Mondaine recorded at the Kansas City DEA office should have been suppressed. The argument may be advanced only on behalf of Hodge.

■ It was the intent of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2511(2)(c) (1970), to allow consensual interception of telephone conversations without an authorizing warrant:

> It shall not be unlawful under the chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or *one of the parties to the communication has given consent to such interception.* [emphasis added]

Hodge submits that no valid consent to the interception occurred as Mondaine was "coerced" into consenting in hopes of leniency. In *United States v. Silva,* 449 F.2d 145, 146 (1st Cir. 1971) *cert. den.* 405 U.S. 918, 92 S.Ct. 942, 30 L.Ed.2d 787 the Court declared:

> . . . to establish involuntariness the defendant's burden is to show that [the informant's] will was overcome by threats or improper inducement amounting to coercion or duress . . . we do not view a promise of leniency with respect to a pending indictment as coercive, at least in the absence of evidence that the indictment had been improperly brought.

Mondaine testified that contact with the DEA was upon his voluntary initiation and that, although he hoped for leniency, no promise of leniency was offered by govern-

---

13. Paragraph 1 of the affidavit.

ment officials. Hodge has presented no evidence of coercive threats or improper inducement of Mondaine and has thus failed to carry his burden of proof on this issue.

■ Hodge argues that if 18 U.S.C. § 2511(2)(c) permits the introduction of recordings of telephone conversations consented to by one of the parties, it is in violation of the Fourth Amendment. However, as no one has a constitutionally protected expectation that the person to whom he voluntarily reveals incriminating information will keep it secret, the consensual interceptions permitted under this provision do not offend the Fourth Amendment. See *United States v. Quintana,* 508 F.2d 867, 872 n.3 (7th Cir. 1975). *See also United States v. White,* 401 U.S. 745, 751, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Hoffa v. United States,* 385 U.S. 293, 302, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

■ In an argument that is actually a mixture of Fifth and Sixth Amendment claims, Hodge submits that the interception violated his right to due process under the Fifth Amendment as the conversations were recorded to gather incriminating evidence against him without affording him: 1) the requisite warnings enumerated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and 2) the assistance of counsel as directed in *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). As *Escobedo* and *Miranda* speak specifically to custodial situations, neither is applicable authority in this case.

■ We also reject Hodge's argument that the introduction of the recordings violated the Federal Communications Act, 47 U.S.C. § 605 (1970).[14] It is well settled that there is no violation of the Act if the interception was, as here, authorized by a party to the conversation. *Rathbun v. United States,* 355 U.S. 107, 109, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957); *Bufalino v. Michigan Bell Telephone Co.,* 404 F.2d 1023 (6th Cir. 1968), *cert. den.* 394 U.S. 987, 89 S.Ct. 1468, 22 L.Ed.2d 763 (1969). Nor, for the reasons discussed above, is Mondaine's consent to the recording negated solely by his hopes of leniency for cooperating with DEA officials.

■ Hodge next argues that the search and seizure provision of the Michigan Constitution, Article I Section II, as interpreted in *People v. Beavers,* 393 Mich. 554, 227 N.W.2d 511 (1975), barred the receipt of the recordings into evidence. In *Beavers,* the Michigan Supreme Court held that "participant monitoring" recordings were unlawful

14. *§ 605.* Unauthorized publication or use of communications

   Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is broadcast or transmitted by amateurs or others for the use of the general public, or which relates to ships in distress.

under the Michigan Constitution unless obtained pursuant to a valid search warrant. Even if Michigan law was violated the tape recordings would not become inadmissible thereby in a federal criminal trial. It is well settled that in criminal cases, the federal District Courts will decide evidence questions on the basis of federal rather than state law. *United States v. Armocida,* 515 F.2d 49, 52 (3d Cir. 1975); *United States v. Shaffer,* 520 F.2d 1369, 1372 (3d Cir. 1975).

We turn to consideration of Hodge's final contention, that the trial judge's refusal to submit his requested entrapment instruction to the jury was error. During the trial, Hodge testified that Mondaine had called him at least twelve times prior to their recorded conversation on December 7, 1973, desperate about losing his liquor store in Kansas City. Mondaine reportedly declared that his mother was very sick and that his father had been unemployed for four years. Hodge testified that he was implored by Mondaine to get him some drugs which Mondaine claimed would be the only way out of his financial difficulties. Hodge's testimony about Mondaine's imploring was uncontroverted. Hodge also denied knowing anything about or previously being involved in the narcotics business.[15] He further testified that he did not want to have anything to do with the illegal purchase of the drugs, but that his will was overbourne by the persistent urgings of Mondaine.

■ The District Judge has the duty of determining whether the evidence bearing on the issue of entrapment is in dispute or whether the question can be resolved as a matter of law. In cases where the evidence bearing on the question of entrapment is in dispute, the defense of entrapment must be submitted to the jury. *United States v. Carroll,* 518 F.2d 187, 188 (6th Cir. 1975); *United States v. Ambrose,* 483 F.2d 742, 746 (6th Cir. 1973); *United States v. Head,* 353 F.2d 566, 568 (6th Cir. 1965); *United States v. Cooper,* 321 F.2d 456 (6th Cir. 1963).

As we stated in *Head, supra* at 568:

"Ordinarily, entrapment is a question of fact and in jury cases must be submitted to the jury. In [*Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932)] the Court remanded the case to the District Court for retrial with instructions to submit the issue to the jury. *It may become a question of law when the facts are undisputed.* [Emphasis supplied.]

■ Entrapment is established as a matter of law if the undisputed evidence demonstrates that government agents engaged in conduct which "overbears an otherwise innocent person's will and thereby induces him to commit a criminal act that he was not disposed to commit." *Ambrose, supra* at 746. If, on the other hand, the undisputed evidence demonstrates that the agents did not engage in such conduct, as a matter of law the defense of entrapment is not appropriate.

■ Hodge, by his undisputed testimony, effectively raised an entrapment defense by arguing that he had not previously dealt in drugs but was only, just this one time, responding to the plea of a friend in trouble. Although there was a good deal of evidence from which the jury could have concluded that Hodge was not the "unwary innocent" whom the defense of entrapment was established to protect, the District Court nevertheless erred in failing to submit the entrapment defense to the jury.

Appellants have raised a number of additional issues on appeal which we find to be without merit.

The convictions of Appellant Robertson are affirmed and the convictions of Appellant Hodge are reversed and remanded for new trial.

---

15. Hodge denied obtaining the heroin from the Rosemont address. He claimed to have contacted a man called "Rabbit" Batista around the end of November to inquire into the price and nature of the drugs. Hodge testified that the information which "Rabbit" gave him was the data he forwarded to Mondaine during their recorded conversations. He claimed that "Rabbit" delivered the heroin directly to the Richton residence and that it was simply handed to Mondaine.