UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles Edward JONES,
Defendant-Appellant.

No. 77–5116.

United States Court of Appeals,
Sixth Circuit.

March 30, 1978.

As Corrected April 27, 1978.

Leroy Phillips, Jr., Phillips & Cash, Chattanooga, Tenn., for defendant-appellant.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., Ray H. Ledford, Chattanooga, Tenn., for plaintiff-appellee.

Before EDWARDS and LIVELY, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

Appellant, Charles Edward Jones, appeals his conviction by a jury in the United States District Court for the Eastern District of Tennessee, Southern Division, on a charge of receiving firearms shipped in interstate commerce, while being a felon, in violation of 18 U.S.C. Section 922(h).

The appellant was indicted on two counts of violating Sections 922(h),[1] 922(a)(5) and 924(a),[2] Title 18, U.S.C. Count one charged the appellant, having been a felon, with knowingly receiving firearms, two Remington Model 870, 12 gauge pump shotguns, which had been shipped and transported in interstate commerce in violation of Section 922(h). Count two charged the appellant with the sale of the same two guns in violation of Section 922(a)(5). The appellant was convicted on count one and acquitted on count two. He was sentenced to four years imprisonment.

The first issue presented to the court for review is whether the appellant was entitled to a judgment of acquittal at the close of the government's case based on the defense of entrapment. We consider first the facts of the government's case in chief.

George L. Bradley, a Special Agent with the Bureau of Alcohol, Tobacco and Firearms Division of the United States Treasury Department, determined early in February 1976 to conduct an investigation of the appellant, Charles Edward Jones, with reference to violations of the laws pertaining to traffic in firearms. It is conceded that Jones had been convicted of the felony of possessing burglary tools in the State of Georgia in April of 1966. Jones had no criminal record since that time, prior to the conviction now under consideration, nor is there any evidence as to why Agent Bradley initiated this investigation against the appellant. The prior felony conviction was prerequisite to count one of the indictment.

Bradley engaged Helen Risler and her son, Britt Risler, to assist in the initial investigation on the basis of information from another A.T.F. Agent, Joe Langford, to the effect that the Rislers were acquaintances of the appellant. Bradley's initial contact with Britt Risler was on or about February 11, 1976, at which time A.T.F. Agents John Franklin and Paul Heaton were present. Bradley told Risler that they wanted to conduct an investigation on Charles Edward Jones and that they would pay him fifteen dollars per day subsistence and that they would pay him an award based on the results of the investigation. He stated further that the award would be determined by his supervisor but that he would recommend $1,000. He also advised him that they could not entice or induce someone to do something that they would not ordinarily do. That this was the law of entrapment.

Subsequently, on or about February 23, 1976, Bradley had his initial contact with Helen Risler. A.T.F. Agent Joe Langford was present. He made a similar agreement with her as he did with her son for the payment of subsistence and an award based on the results of the investigation. He

---

1. It shall be unlawful for any person (1) * * * who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year; to receive any firearm * * * which has been shipped or transported in interstate * * * commerce.

2. Penalty. * * * shall be fined not more than $5,000, or imprisoned not more than five years, or both * * *.

testified, "I also told her that the recommended award would be $1,000 by me if the investigation was successful * * *." He also instructed her on the law of entrapment.

Bradley instructed Helen Risler to set up a meeting with the appellant. Such a meeting was arranged and Bradley equipped her with a monitoring device so that he could hear the conversation. Bradley testified that the appellant stated, "that this man only had one of those things, that it would be the same price they had talked about, about two and a half." A further meeting was arranged between these two parties and Bradley equipped Helen Risler with a body transmitter and gave her $250 with which to buy firearms from the appellant.

Bradley testified that later he saw the appellant arrive at the prearranged place in a pick up truck. He saw the appellant transfer what appeared to be a gray sack to Britt Risler, which Risler put in his car.

Special Agent Robert Hofer, who was acting as undercover man in this investigation, had been introduced to the Rislers and to the appellant. He went to Britt's car and brought the "gray sack" to Bradley. This turned out to be a firearm.

There is testimony of one or two other meetings between the Rislers and appellant in which the conversations were monitored by devices furnished by Bradley. Apparently one other firearm was furnished by the appellant to the Rislers.

Special Agent Hofer, who was known to the appellant as Bob Gofer, had a meeting with the appellant on March 31, 1976. At this meeting, Hofer told the appellant that he and some others planned to rob a poker game and that they needed some heavy weapons. It was arranged that the appellant would get the guns and, as a part of the robbery, he was to drive a get-away car and share in the proceeds of the robbery. Pursuant to the plan, the appellant secured two Remington 870 pump shotguns for Hofer and for which Hofer paid the appellant $300.

These guns were turned over to Agent Bradley and they are the subject of this prosecution. At the time Hofer met with the appellant, he, apparently, was ready and willing to participate in the plan of the robbery and the purchase of the guns.

At this point, where Bradley had the evidence for prosecution, he paid Britt Risler $720 in subsistence, his mother $660 in subsistence and, to each of them $1,000 as an award. According to the evidence in chief, the appellant had not been convicted of any crime since March of 1966. The plan of a robbery and the purchase of firearms in connection therewith was suggested to the appellant by Special Agent Hofer and the Rislers, the hired employees.

The Rislers were not called as witnesses at the trial. Bradley testified on cross examination that Britt Risler had just been released from the penitentiary where he had served a one to three year term for burglary. He also testified that he knew that Helen Risler had some 40 outstanding bad checks and that she had pleaded guilty to two check charges and was on probation at the time of the investigation. It developed in the presentation of the government's case, that Bradley knew that Helen Risler had been arrested for soliciting the defense lawyer for a payment of $3,000 to absent herself from the trial.

The defense rested without submitting any evidence.

■ Simply stated, when entrapment is asserted as a defense, if the defense raises the issue by evidence either in the government's case in chief, or in the defense, the burden of proof is on the government to prove beyond a reasonable doubt that the defendant had a predisposition to commit the crime.

In *United States v. Ambrose*, 483 F.2d 742, 753 (6th Cir. 1973) the court said, " * * * the defendant was required to introduce evidence of inducement before the prosecution would be required to prove beyond a reasonable doubt that the defendant was predisposed * * *" See also *United States v. Eddings*, 478 F.2d 67 (6th Cir. 1973).

In *Kadis v. United States,* 373 F.2d 370 (1st Cir. 1967) the court said at 373–374, "Henceforth we will look, singly, at the ultimate question of entrapment. If the defendant shows, through government witnesses or otherwise, some indication that a government agent corrupted him, the burden of disproving entrapment will be on the government; but such a showing is not made simply by evidence of a solicitation. There must be some evidence tending to show unreadiness."

As to quantity of "some evidence" see further discussion in *Kadis* at p. 374.

See also *United States v. Braver,* 450 F.2d 799, 801–05 (2nd Cir. 1971), *cert. den.,* 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 794; *United States v. Steinberg,* 551 F.2d 510, 513–514 (2nd Cir. 1977); *United States v. Silver,* 457 F.2d 1217, 1220 (3rd Cir. 1972); *United States v. Watson,* 489 F.2d 504, 509 (3rd Cir. 1973); *United States v. DeVore,* 423 F.2d 1069, 1071 (4th Cir. 1970); *United States v. Groessel,* 440 F.2d 602, 606 (5th Cir. 1971), *cert. den.,* 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971); *United States v. Virciglio,* 441 F.2d 1295, 1298 (5th Cir. 1971).

■ Entrapment may be established as a matter of law if the undisputed evidence demonstrates that government agent engaged in conduct which "overbears an otherwise innocent person's will and thereby induces him to commit a criminal act that he was not disposed to commit." *United States v. Hodge,* 539 F.2d 898 (6th Cir. 1976); *United States v. Ambrose,* 483 F.2d 742, 746 (6th Cir. 1973).

■ If the evidence bearing on the question of entrapment is in dispute, the question must be submitted to the jury. It is the duty of the trial judge to determine whether the evidence is in dispute or whether the question can be resolved as a matter of law. *United States v. Hodge, supra; United States v. Carroll,* 518 F.2d 187, 188 (6th Cir. 1975); *United States v. Ambrose, supra.*

In the case at bar there is no direct evidence from which it could be determined that the appellant was entrapped into committing the crime. The district judge, however, submitted the issue to the jury. He instructed the jury that the burden was on the government to prove beyond a reasonable doubt that the defendant was ready and willing to commit the crimes whenever an opportunity was afforded him to do so and that the government officers did no more than offer him an opportunity to commit the crimes.

Certainly, there is no evidence that would support a finding that entrapment was established as a matter of law. If we may assume that there was evidence from which it could be inferred that the appellant was entrapped, this would present a disputed question to be submitted to the jury and the government would be required to assume the burden of proof. We consider that there was evidence from which the jury could find that the government had proved beyond a reasonable doubt that there was no entrapment.

As heretofore stated at a meeting between Helen Risler and the appellant, he was heard to say, "that this man only had one of those things, that it would be the same price they had talked about, about two and a half." At a subsequent meeting, after Agent Bradley had given $250 to Helen Risler with which to buy guns, the appellant transferred to Britt Risler what appeared to be a gray sack. This, through Agent Hofer, was given to Agent Bradley. It turned out to be a firearm. One other firearm was furnished to the Rislers by the appellant.

Then, as heretofore stated, there was the meeting of March 31st between Agent Hofer and the appellant in which the appellant entered into the plans for a robbery as detailed by Hofer. In preparation for this robbery he obtained two Remington 870 pump shotguns for Hofer. He received these guns from one Paul Carry Maddox with whom he made arrangements to purchase them for him. The purchase was made with money given to him by Agent Hofer. This is the transaction which is the basis of the first count of the indictment.

■ There is, therefore, ample evidence from which it could be inferred by the jury that the appellant had a predisposition to commit the crime when the opportunity was presented to him.

In *United States v. Jackson,* 539 F.2d 1087, 1090 (6th Cir. 1976), the Court said,

"There was evidence, both from agent Smith and the defendant himself, from which it could reasonably be *inferred* that Leon Jackson had a predisposition to deal in narcotics at the time of his first contact with agent Smith." (Emphasis added)

We conclude that the motion for judgment of acquittal at the close of the government's case was properly overruled.

■ It is argued on behalf of the appellant that the government violated his rights relative to the law of entrapment and under the due process clause of the Constitution of the United States by virtue of a contingent fee arrangement entered into by the regular government agents with special employees Helen and Britt Risler. It is also contended that this situation requires reversal of the appellant's conviction under the supervisory powers of the court.

We have heretofore stated the facts with the reference to the employment of the Rislers as special employees. To summarize, Agent Bradley testified that he told them that he would pay them fifteen dollars per day subsistence and would pay them an award based on the results of the investigation. This award he would recommend to be $1,000. He also told Mrs. Risler that the recommended award would be $1,000 if the investigation were successful. At the same time, Agent Bradley gave each of the Rislers brief instructions on the law of entrapment.

On cross examination Agent Bradley testified,

"I stated that if the investigation resulted in a case and Mr. Jones was in violation of the law and we prepared a case, that I would recommend an award and I said I would recommend $1,000, but the final determination would be by my supervisors, depending on the investigation."

The Rislers were paid their subsistence and awards in May or June and a warrant for the appellant's arrest was not secured until October. The awards were not paid on the basis of getting a conviction.

In support of its claim on behalf of the appellant, counsel cites *Williamson v. U. S.,* 311 F.2d 441 (5th Cir. 1962). In this case government agents hired an informer whereby the informer was to purchase illicit whiskey from certain named men, and was to receive a specified fee for each man. The informer was to be paid $200 and $100 if he could "catch" certain ones. The court found this to be a contingent fee and reversed the conviction, saying,

"It becomes the duty of the courts in federal criminal cases to require fair and lawful conduct from federal agents in the furnishing of evidence of crimes." (at 444)

The Fifth Circuit's application of *Williamson* in subsequent cases indicated that it sought to distinguish or dilute its holding in *Williamson.* In *United States v. Garcia,* 528 F.2d 580, 586, *cert. den.,* 426 U.S. 952, 96 S.Ct. 3177, 50 L.Ed.2d 1190 (sub nom. Sandoval), the court said,

" * * * we have refused to extend this ruling to the situation (*Williamson*) where an informant is paid a subsistence allowance and given a reward, as long as there is no evidence that he had been promised a specific sum to convict a particular person."

However, we are not concerned with *Williamson,* since the Sixth Circuit has refused to follow the Fifth Circuit in the rule announced by it in *Williamson.* *United States v. Grimes,* 438 F.2d 391 (6th Cir. 1971), *cert. den.,* 402 U.S. 989, 91 S.Ct. 1684, 29 L.Ed.2d 155 (1971).

The court said, at 395,

"Here, however, we feel that it is unnecessary to search the record for a significant distinction since we are convinced

that the *Williamson* doctrine should not be approved for this circuit."

Further, at 395, 396, the Court said,

"No such overriding policy is present when an informer is paid on a contingent fee agreement for the conviction of specified persons for crimes not yet committed. Although it is true that the informant working under this type of arrangement *may* be prone to lie and manufacture crimes, he is no more likely to commit these wrongs than witnesses acting for other, more common reasons. Frequently, for example, one co-defendant testifies against another co-defendant with the expectation of favorable treatment as a reward for his testimony. Like the informant being paid on a contingent fee basis, a co-defendant so testifying may feel it imperative to obtain a conviction of his co-defendant in order to improve his own position. Similarly, informants paid on bases other than a contingent arrangement may feel that their employment will be terminated if they do not bring about a conviction. Therefore, despite admonitions to the contrary, they may believe that their future employment as an informant depends on the manufacture of crimes in order to prove their worth to the government. Neither of these methods of 'paying' informers has been seriously attacked by the courts; yet the potential for abuse is obvious in each case. Rather than adopting an exclusionary rule for a particular factual situation, irrespective of the mode of payment, we prefer the rule that would leave the entire matter to the jury to consider in weighing the credibility of the witness-informant (Citation omitted). In our view this approach provides adequate safeguards for the criminal defendant against possible abuses since the witness must undergo the rigors of cross-examination."

We decline to exercise the supervisory powers of the court for reversal on the basis of a contingent fee arrangement. Nor do we find that the appellant was denied due process of law under the Constitution of the United States.

Another claim made on behalf of the appellant is that the trial judge erred in permitting Agent Bradley to testify that he had instructed the Rislers, paid government undercover employees, with reference to the law of entrapment.

Specifically, Agent Bradley said,

"I told Mr. Risler that we cannot entice or induce someone to do something that they would not ordinarily do, that was the law of entrapment, and Mr. Risler stated that he understood."

To Mrs. Risler he said,

"That we cannot entice or induce someone to commit something or some type of crime that they would not ordinarily do, so we didn't want to put someone into the position of committing a crime that we didn't feel they would ordinarily do."

■ Entrapment was already an issue in the case. In an answer to a question by the court, counsel for the defendant announced that he was relying on entrapment as a defense. These cautionary instructions to the Rislers had no bearing on the proof of whether there was or was not entrapment.

We find no error prejudicial to the appellant in the admission of this testimony. See *Williamson v. United States,* 311 F.2d 441 (5th Cir.); *United States v. Durham,* 413 F.2d 1003 (5th Cir.); *United States v. Garcia,* 528 F.2d 580 (5th Cir.), where the subject of instructions to informants and paid employees on the law of entrapment is discussed.

■ Other claims made on behalf of the appellant are that the trial judge erred in not permitting Mr. Phillips, counsel for appellant, to testify to the details with reference to the incident of Mrs. Risler soliciting Mr. Phillips for $3,000 to absent herself from the trial and in not permitting attorney Bill Wilson to testify to a similar incident with Mrs. Risler in another case.

Mr. Phillips proffered his testimony which was a detailed account of Mrs. Risler's solicitation, the subsequent meetings with her, the final payment of $3,000 and her arrest.

In his proffered testimony he said,

"She said that she had tricked my client into the situation that *she* was in. Later on she used the word 'trapped'. She used the word tricked and trapped several times and use of the word several times later on in subsequent conversations." (Emphasis added)

He said that, in a later meeting, she said that she "wanted to right a wrong."

The trial judge ruled that the proffered testimony of Mr. Phillips was not admissible on the ground that it was collateral to the issues in the case. We agree with this ruling. In addition to the testimony being collateral, what Mrs. Risler said to Mr. Phillips was hearsay without the government having any opportunity to cross examine.

The alleged statement of Mrs. Risler that she had tricked or trapped the appellant into the position that *she* was in is disturbing. This could have several meanings. Apparently she was embarrassed that, through her undercover work, she was in a position to have to testify against her friend and, therefore, would like to absent herself from the trial. It could mean through her undercover work she had put the appellant in a position, by giving him an opportunity, to violate the law as well as that she had entrapped him into a violation of the law against his will. Finally, considering her unreliability, she may have just been seeking more money, with which she intended to bribe a probation officer. Unfortunately, we will never know what she had in mind.

Mrs. Risler's offer to Mr. Phillips to absent herself from the trial for $3,000 and her arrest was brought out in the direct and cross examination of Agent Bradley. The proffered testimony of Mr. Phillips would not have added anything for the benefit of the appellant.

The offer to have Bill Wilson testify as to the conduct of Mrs. Risler in another case was wholly collateral to the case at bar and was properly denied.

Finally, the defense claims that the trial judge erred in not sustaining objections of defense counsel to the arguments of counsel for the government when it was claimed that he made statements outside of the record.

The judge took note of each objection and instructed the jury that it should disregard any statements in argument that were not supported by evidence and that it should follow his instructions which would be given at the conclusion of the arguments. We conclude that the trial judge properly instructed the jury upon all matters involved in the alleged improper arguments of counsel for the government and that the appellant was not prejudiced by such arguments. We find no error in the alleged improper arguments of counsel as claimed by the defense.

The judgment of the District Court is AFFIRMED.