900 F.2d 260
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel L. BURKE, Defendant-Appellant.
 No. 89-3964.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1990.
 
 On Appeal from the United States District Court for the Southern District of Ohio, 89-60016, Graham, D.J.
 S.D.Ohio
 AFFIRMED.
 Before KEITH and ALAN E. NORRIS, Circuit Judges, and CHARLES W. JOINER, Senior District Judge*.
 PER CURIAM.
 
 
 1
 Defendant-appellant Daniel L. Burke appeals his convictions for distributing cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. Burke contends that he is entitled either to judgment in his favor or a new trial. In support of his contentions, Burke asserts six assignments of error: (1) the district court failed to recognize that entrapment had been established as a matter of law; (2) the district court improperly instructed the jury on predisposition, an essential element of the entrapment defense; (3) the district court failed to instruct the jury to consider the entrapment evidence for the entire course of conduct and not separately for each count; (4) the district court abused its discretion on several evidentiary rulings; (5) reference to a polygraph test agreement between the government and its witness deprived Burke of a fair trial; and (6) the district court erred in denying his motion for acquittal or a new trial. Concluding that none of Burke's arguments are meritorious, we affirm.
 
 I.
 
 2
 In June 1987, Jeffrey White was recruited to serve as a paid undercover informant for the United States Postal Service and, in August, he was assigned to the post office in Columbus to investigate allegations of drug use and drug trafficking by postal employees.
 
 
 3
 On November 9, 1987, White reported to Agent Craig Glende of the Postal Inspection Service that he had seen two postal employees, later identified as Daniel L. Burke and Vicky Gunn, engage in a drug transaction the day before. White told Glende that after he had seen a female employee hand cash to a male employee, the male employee went inside the employee locker room and retrieved a plastic bag which, White believed, contained marijuana. Believing that Burke might be trafficking in more serious drugs, Inspector Glende instructed White to attempt to purchase cocaine from Burke.
 
 
 4
 On December 16, 1987, White approached Burke on the main workroom floor of the post office and asked him if it would be possible to purchase a gram of cocaine. Burke responded that he could supply the cocaine and that it would cost $100. This conversation was recorded by a body recorder attached to White and the encounter was clandestinely video taped from a lookout gallery. Two days after this conversation, a day on which Burke was not at work, another postal employee, Marshall Smith, waived White into the men's restroom and handed White a gram of cocaine for which White paid $100. The cocaine was forwarded to the forensic laboratory in Washington, D.C., where it was determined that the cocaine weighed .88 grams and had a purity level of 94%. This transaction formed the basis for Count 1 of the indictment.
 
 
 5
 On February 13, 1988, White approached Burke to buy another gram of cocaine. Once again, the solicitation occurred at the post office and was recorded by White. The next day, White, Burke, and Inspector Glende, posing as "Mike," a friend of White's, met outside a city park recreational center where Burke informed White that he might be able to obtain the cocaine for him that evening. Later that night, Burke gave White some cocaine which was later determined to be .65 of a gram and 90% pure. These events formed the basis for Count 2 of the indictment.
 
 
 6
 On March 8, 1988, White asked Burke for a third gram of cocaine and, again, paid $100 for it. This conversation, however, was not recorded.
 
 
 7
 One day later, White called Burke's home from Inspector Glende's office. White asked Burke to give the gram of cocaine he had purchased the night before to his friend "Mike" later that day. At 4:15 p.m., Burke met "Mike" (Inspector Glende) at the post office and indicated that the cocaine was located in his car. Glende retrieved the cocaine from the car and a subsequent forensic evaluation indicated that the .62 gram of cocaine retrieved from the car was 90% pure. This predicate act was the basis for the third count in the indictment.
 
 
 8
 On January 26, 1989, the Grand Jury returned a three-count indictment against Burke. A jury was impaneled and trial commenced on May 30, 1989. Burke's primary defense at trial was entrapment. He contended that he lacked the necessary predisposition to sell cocaine and was, instead, seduced by White's repeated entreaties to provide cocaine. At the close of all the evidence, the court instructed the jury on the essential elements of entrapment. Burke objected to the instruction, contending that the jury should be told that if entrapment was established on the first count, Burke should be found not guilty on all subsequent counts. The court rejected this instruction and instructed the jury to consider each count separately.
 
 
 9
 On June 1, 1989, the jury returned three separate verdicts which found Burke not guilty on Count 1 and guilty on Counts 2 and 3. Burke's motions for judgment of acquittal and for a new trial were denied on July 13, 1989. On October 2, 1989, Burke was sentenced to five years of probation and six months in a community treatment center and, on October 18, 1989, he filed his notice of appeal.
 
 II.
 
 10
 Burke first contends that having established entrapment as a matter of law, he was entitled to have the issue taken from the jury. In United States v. McLernon, 746 F.2d 1098, 1111 (6th Cir.1984), we held that if the facts pertaining to entrapment are not in real dispute, the question of entrapment may be taken from the jury. Citing Sherman v. United States, 356 U.S. 369 (1958), and its Sixth Circuit progeny United States v. Hodge, 539 F.2d 898 (6th Cir.1976), cert. denied, 429 U.S. 1091 (1977), and United States v. Jones, 575 F.2d 81 (6th Cir.1978), we explained that entrapment may be established as a matter of law where the government presents no evidence to meet its burden of proving disposition or readiness beyond a reasonable doubt. The issue on appeal, we taught, is whether the "undisputed evidence" in the case was sufficient to establish beyond a reasonable doubt that the defendant was induced to commit criminal acts he was not otherwise disposed to commit. McLernon, 746 F.2d at 1111 (citing Hodge, 539 F.2d at 906; Jones, 575 F.2d at 84).
 
 
 11
 Viewing the evidence in the light most favorable to the prosecution, Glasser v. United States, 315 U.S. 60 (1942), we conclude that there was sufficient evidence pertaining to the issue of entrapment to warrant submitting the issue to the jury. In McLernon, we recognized that predisposition is an ethereal concept and, accordingly, delineated several factors relevant to determining a defendant's prior disposition. These factors include
 
 
 12
 the character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Governmental inducement or persuasion; and the nature of the inducement or persuasion supplied by the Government.
 
 
 13
 McLernon, 746 F.2d at 1112 (citing United States v. Kaminski, 703 F.2d 1004 (7th Cir.1983) quoting Reynoso-Ulloa, 548 F.2d 1329 (9th Cir.1977), cert. denied, 436 U.S. 926 (1978)).
 
 
 14
 With these factors in mind, and recognizing that, in order to establish entrapment as a matter of law, predisposition must not be in dispute, United States v. Johnson, 855 F.2d 299, 303 (6th Cir.1988), we conclude not only that the issue was properly presented to the jury but that the government presented sufficient evidence at trial from which a reasonable juror could have found that Burke was predisposed to distribute cocaine. Not only did the government's evidence establish that Burke trafficked in drugs before he was approached by the undercover investigator, albeit marijuana and not cocaine, it also established that Burke demonstrated no reluctance to sell cocaine, that he was able to obtain cocaine within forty-eight hours, that he willingly accepted the informant's money, and that after the initial transaction Burke seemed amenable to future transactions. In short, the record is replete with evidence putting the issue of predisposition at issue and, therefore, the entrapment defense was properly submitted to the jury.
 
 
 15
 Burke next contends that the district court improperly instructed the jury on the nature of the predisposition necessary to overcome the defense of entrapment. Burke's proposed jury instruction, which was rejected by the court, included the following language:
 
 
 16
 [W]ithout other evidence of "predisposition", the "ready complaissance" of a Defendant to accede to the solicitations of government agents cannot alone provide basis for finding the Defendant to be "predisposed".
 
 
 17
 This language was necessary, Burke argues, in order to incorporate the Supreme Court's holding in Sherman which requires the government to show more than a "ready complaissance" in order to establish predisposition.
 
 
 18
 The district court charged the jury as follows:
 
 
 19
 [E]ntrapment occurs when the government's conduct actually implants the criminal design in the mind of the defendant. Inducement by law enforcement officials may take many forms including persuasion, coercive tactics, or pleas based on need, sympathy or friendship. A solicitation or request or approach by law enforcement officials to engage in criminal activity, standing alone, is not an inducement. However, when a person is ready and willing to break the law, the mere fact the government agent provided what appears to be a favorable opportunity for the defendant to commit a crime is not entrapment.
 
 
 20
 This instruction accurately reflects the law of entrapment in this circuit and no error occurred when the district court rejected Burke's proposed instruction.
 
 
 21
 Burke next argues, as he argued in his motion for judgment of acquittal and for a new trial, that it was error not to instruct the jury that if it found that Burke was entrapped into committing the offense in Count 1, it must also find that he was entrapped into committing the other two offenses. Burke argues, essentially, that it was improper to allow the jury to consider each charge separately and that a finding of entrapment on one offense should preclude a contrary conclusion on the other charges.
 
 
 22
 The district court recognized that several other circuits have held that a finding of initial entrapment does not immunize a defendant from liability for subsequent transactions which he readily and willingly undertakes. See United States v. Smith, 802 F.2d 1119 (9th Cir.1986); United States v. North, 746 F.2d 627 (9th Cir.1984), cert. denied, 470 U.S. 1058 (1985); United States v. Khubani, 791 F.2d 260 (2d Cir.), cert. denied, 479 U.S. 851 (1986); United States v. Cruz, 783 F.2d 1470 (9th Cir.1986). Although the matter has not been squarely addressed in this circuit, we have in the past suggested that it is not improper for a district court to instruct the jury that each charge should be considered separately and that it must make an independent determination of guilt or innocence. United States v. Bols, Slip Op. No. 81-1633 (6th Cir., Oct. 4, 1982). Without deciding under what circumstances, if any, a defendant is entitled to an instruction that independent counts should not be considered separately for purposes of the entrapment defense, we agree with the district court that in a case such as this, a jury should not be precluded from finding that defendant was not entrapped into second and third offenses, even if it is assumed that the jury concluded that defendant was entrapped into committing the first offense.
 
 
 23
 As the district court properly recognized, reasonable minds could differ over whether or not Burke was predisposed to commit each of the offenses charged and, therefore, the issue was properly left to the jury. In addition, as the district court pointed out, even assuming that the jury did acquit Burke on the first count because it concluded that he had been entrapped, it would not have been inconsistent for the jury to have concluded that Burke freely decided during the two months between the first and second transactions that trafficking in cocaine was a profitable enterprise. Agreeing with the district court that it was appropriate under these circumstances for the jury to consider each offense independently, we must conclude, a fortiori, that it could not be improper not to instruct the jury to consider the transactions as part of a continuing "course of conduct."
 
 
 24
 Defendant's final two arguments may be dealt with summarily. His penultimate assignment of error is that it was improper for the district court to sustain the government's objection to a question posed by defense counsel to defense witness Daniel Collins. Defendant argues that the questions--"From all your personal knowledge of Daniel Burke, do you have any opinion on whether Daniel Burke was a distributor of cocaine" and "Do you have, yes or no, knowledge of him asking anyone whether they wanted to obtain cocaine?"--was admissible under Fed.R.Evid. 405(a) and that the judge's ruling was prejudicial to his cause.
 
 
 25
 Rule 405(a) of the Federal Rules of Evidence provides that where the evidence of character or a trait of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. As the Advisory Committee Notes point out, however, character has traditionally been regarded primarily in moral overtones of good and bad, such as chaste, peaceable, truthful, and honest. Defense counsel's objection notwithstanding, we agree with the district court that "distributor of cocaine" is not the type of general moral characteristic admissible under Fed.R.Evid. 405(a). The government's objection to the first question, therefore, was properly sustained and the evidence properly excluded. Similarly, the government's objection to the second question was properly sustained as it invited a hearsay response.
 
 
 26
 Finally, defendant argues that he is entitled to a new trial because the government improperly asked its informant, White, whether he had agreed to submit to polygraph testing in conjunction with his undercover role. Again, defendant's arguments are simply a rehash of arguments previously submitted to the district court. In rejecting defendant's motion for a new trial, the district court noted that the court sustained defendant's objection to the testimony and twice gave a cautionary instruction to the jury to ignore the reference to the polygraph. More importantly, the court noted that
 
 
 27
 [t]his case concerns only a reference to the willingness of the witness to submit to a polygraph examination, upon request of postal authorities, not a reference to an examination actually conducted which might lead the jury to speculate as to the results of the examination. Even where the witness refers to having taken a polygraph test, courts have held that a mistrial was properly denied. See, e.g., United States v. Holman, 680 F.2d 1340 (11th Cir.1982); United States v. Smith, 565 F.2d 292 (4th Cir.1977).
 
 
 28
 Finding the reasoning of the district court to be eminently sound, we again reject defendant's argument and conclude that the government's reference to the polygraph, while improper, does not warrant a new trial.
 
 III.
 
 29
 For the reasons stated above, Burke's convictions are affirmed.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior District Judge for the Eastern District of Michigan, sitting by designation