CHARLES H. HAGEMAKER, ALVIN ROBINSON and JOHN SCOTT

*v.*

STATE OF TENNESSEE.

(*Knoxville,* September Term, (May Session) 1960.)

Opinion filed May 26, 1961.

WILLIAM J. TROUTT, PAUL W. SORRICK, JR., MORGAN & COLEMAN, Chattanooga, for plaintiffs in error.

THOMAS E. FOX, Assistant Attorney General, for defendant in error.

MR. CHIEF JUSTICE PREWITT delivered the opinion of the Court.

The plaintiffs in error, Charles H. Hagemaker, Alvin Robinson and John Scott, defendants below, were convicted of burglary in the third degree and sentenced to serve for a term of three years in the State Prison.

Counsel for defendants have filed separate briefs in which they make a number of assignments of error, but there is only one question before us and that is the court below erred in not allowing these defendants the defense of entrapment. The question is also raised that the evidence preponderates against the verdict and in favor of the innocence of the accused.

The defendants were caught inside one of the buildings of the Signal Mountain Division of the General Portland Cement Company about midnight, January 27, 1960.

All of the doors were locked except two. These two doors were fastened but not locked.

The defendants, Hagemaker and Scott, were found in the office where a company safe had been broken into and Hagemaker had on a pair of gloves. The combination to the safe was lying on the office floor. There was also a sledge hammer, a bar, and a punch on the office floor. Robinson was caught attempting to run from the building with a tire tool in his hand by officers stationed at the back door.

Robinson admitted taking his socks from his feet and putting them on his hands prior to entering the building, and that he had his socks on his hands at the time he was stopped by the officers.

All of the defendants admitted their participation in the offense to the Sheriff. Robinson said he got to drinking with the wrong crowd and to the same effect was the testimony of defendant Scott.

Hagemaker said that he was so drunk he did not know what he was doing. The Sheriff testified that the defendants had been drinking when arrested, but not as drunk as they claimed.

Neither denied participation in the burglary but they contended that they were led into it by J. W. Thomas, without knowledge of what they were getting into. Thomas was twenty or twenty-one years old and an informer of the Sheriff. The defendants ages ranged from thirty years to thirty-seven years. Thomas was arrested with the defendants but escaped as the officers entered the jail with the other defendants.

The record in this case contains about 350 pages of testimony.

There is no doubt about the participation of the defendants in the offense for which they were convicted.

■ It is clearly established that the doctrine of entrapment is not recognized in this State. Our leading cases in Tennessee are *Thomas v. State,* 182 Tenn. 380, 187 S.W.2d 529, and *Hyde v. State,* 131 Tenn. 208, 174 S.W. 1127.

In *Thomas v. State,* supra, it appeared that an undercover agent had a porter at a hotel in Memphis, buy a bottle of whiskey for him and then placed him under arrest. This Court held on appeal in error that the defense of entrapment was not available to the defendant under the facts of that particular case.

In the Thomas case the only inducement offered by the officer to promote a sale of liquor was an offer to buy. However, the Court did not say that it would not recognize the defense of entrapment where the whole machinery to violate the law originated in the minds of the officers of the law, or their agents.

It is necessary in the determination of the case before us to give a full statement of the proof as developed on the trial. On the night of January 26, 1960, Hagemaker, Robinson and Scott met in the early part of the evening at a beer tavern. Scott and Hagemaker had worked that day and these two men had their dinner together at Hagemaker's house, and after eating they went to the beer tavern together. Robinson joined them. It had been the custom of these men to get together after work hours over a long period of time. After the three had been there for some time drinking beer and whiskey Thomas came into the tavern. There is no doubt that he had been the agent and the informer of the Sheriff for sometime. This was the first time Thomas had ever joined them, and it was the first time he had been seen by the defendant, John Scott, in over a year.

Thomas stopped where Hagemaker was seated and talked to him and mentioned something about money; thereupon Thomas got up and walked to the door and said, "Come on John"; at that point Robinson expressed a desire for another drink of whiskey. Thereupon Thomas told him that he would get some whiskey, but stated to them, "Wait a minute, and I will go with you, as soon as I make a phone call."

It might be said here that the Sheriff stated that Thomas did not call him, but that a woman did. Needless

to say, the three defendants guided by Thomas, who was not drinking, went to Cement Company, and at the suggestion of Thomas went into the establishment. It should be borne in mind that two of the doors were shut, but not locked. All of the defendants went into the building, and it is the theory of the State that they undertook to unlock the safe. About this time one of the defendants ran out with the tire tool.

It appears that when the defendants along with the informer, Thomas, arrived the Sheriff and his deputies were secreted somewhere in the building. The Sheriff and several officers rushed in following one, or two shots by one of the officers, evidently a signal to arrest the defendants. Thereupon, all of the defendants were taken to jail, and the informer, Thomas, made his escape before he reached the jail. The proof shows that no effort was made to apprehend him.

The record discloses that the day before the entry of the defendants, the Sheriff was at this plant, he and the prosecutor superintendent made extensive measurements in and near the plant. The superintendent, Nunn, was in the plant at the time of the raid, which was around midnight, and accompanied the Sheriff and the defendants to the jail after they were apprehended.

It appears from the proof that the defendants, Scott and Robinson, had never been in any trouble before, and that they were working men and men of families.

It seems that defendant, Hagemaker, had been in trouble before this on some charge involving whiskey.

From a reading of this record there can be no doubt but that Thomas was an informer, and an agent of the

Sheriff, and that on the night in question he went into this tavern with the purpose of luring these defendants into the commission of this alleged felony.

It also appears that the superintendent of the plant was a party to the plan to apprehend them, or any other defendants that might be with Thomas on this occasion.

So we have in the development of the facts of this case that the Sheriff, his agent, informer Thomas and Nunn, the superintendent of the Cement Company had this pre-arranged plan to apprehend these defendants on the night in question. This being so, it is necessary for us to examine the law in question in such cases.

In 22 C.J.S. Criminal Law sec. 45, it is said:

"One who is instigated, induced, or lured by an officer of the law or other person, for the purpose of prosecution, into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of 'entrapment.' Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent."

"It is a positive defense, the invocation of which necessarily assumes that the act charged was committed. Such entrapment is shown where it appears that officers of the law or their agents incited, induced, instigated, or lured accused into committing an offense which he otherwise would not have committed and had no intention of committing. In other words, if the criminal intent or design to commit the offense charged

originates in the mind of the person who seeks to entrap accused and to lure him into commission of the crime merely for the purpose of arresting and prosecuting him no conviction may be made. The practice of inducing or instigating the commission of a crime by an otherwise innocent person has been denounced as reprehensible and contrary to sound public policy.'' See a number of cases cited in 22 C.J.S. Criminal Law sec. 45.

■ We think that under the facts in this particular case, these defendants were lured into the commission of the offense by the informer and the superintendent of the cement plant. The record discloses that the defendants were in no sense trespassers on the property of the cement company, but that the cement company, through the superintendent, was a party to the allurement, and as such the defendants could not be trespassers, which was necessary for the State to show, in the first place, that they were guilty of a felony.

It therefore results that the judgment of the lower court will be reversed and the case dismissed.