STATE of Tennessee, Respondent,

v.

Charles Edward JONES, Petitioner.

Supreme Court of Tennessee.

March 31, 1980.

Leroy Phillips, Jr., Chattanooga, for petitioner.

William M. Leech, Jr., Atty. Gen., Robert L. DeLaney, John Zimmerman, Asst. Attys. Gen., Gary Gerbitz, Dist. Atty. Gen., Stephen Bevil, Jerry Sloan, Asst. Dist. Attys. Gen., for respondent.

## OPINION

HENRY, Justice.

We granted certiorari in this case primarily in order to consider the defense of entrapment in criminal actions. A secondary issue of confrontation and two other lesser issues are involved.

Petitioner was convicted in the Criminal Court at Chattanooga of solicitation to commit robbery (Section 39–115, T.C.A.) and sentenced to serve from three to six years in the state penitentiary.

The Court of Criminal Appeals, one member partially dissenting, affirmed.

We reverse and remand for a new trial.

### I.

#### General Statement of the Case

This case grew out of a scheme devised by special agents with the Bureau of Alcohol, Tobacco & Firearms, United States Treasury Department, designed to connect and convict respondent of violation of the Federal Gun Control Act.[1]

In the pursuit of this plan, one Helen Risler was engaged as a special employee, or undercover agent, to work with the operation. Subsequently, her son Britt Risler was brought into the picture. The contract of employment provided that each was to receive a subsistence allowance of $15.00 per day plus an "award" of $1,000.00 for successful completion of the project. The City of Chattanooga was to pay a similar amount. At the conclusion of the operation, Helen Risler received payments totalling $3,320.00; Britt Risler received $3,440.00.

According to the agents the plan was to give defendant "an opportunity to violate the law if he so desired." It is apparent that they were well versed in the law of entrapment. In their testimony they drew a fine line between luring or inducing the defendant into the commission of the crime on the one hand and his voluntarily taking advantage of the opportunity they afforded on the other.

The record shows that, operating in conjunction with the Rislers, the federal agents took full advantage of artifice, ruse, deceit and deception to accomplish their mission. As distasteful as this may be, it is a legitimate weapon in the arsenal of law enforcement. The law does not mandate a frank, forthright or even honest approach when seeking to ferret out criminal activity.

Pursuant to their plan, Helen Risler contacted the petitioner, whetted his interest in joining what he was led to believe was a series of unlawful activities to be conducted by the Risler group. She had a number of meetings with petitioner, and at some of these she was equipped with a body transmitter and the conversations were monitored by the agents. (For more detail, see Section III, infra).

On trial, neither of the Rislers testified. (See Section IV, infra). Instead the State's case rested entirely upon the testimony of the two participating ATF agents. Their testimony consisted primarily of reading to the jury the typed transcripts of the various conversations. Hence, the confrontation issue. See Section III, infra.

### II.

#### Entrapment

A. General

Tennessee is the only jurisdiction in the United States that does not recognize the defense of entrapment. More accurately, it is the only jurisdiction that professes that the defense is not recognized. With this opinion we bring our secession to a close and reconstruct our decisional law so as to bring it into harmony with that of our sister states and of the federal system.

From this day forward entrapment is a defense to a Tennessee criminal prosecution.

1. *See United States v. Jones*, 575 F.2d 81 (6th Cir. 1978), for details of the federal prosecution.

Our decisions relating to entrapment are a study in applied confusion, articulated ambivalence, and devious dicta. They say flatfootedly that entrapment is not a defense, yet, simultaneously apply the governing rules. Paradoxically, our research indicates that our appellate courts have never affirmed a conviction where the elements of the defense of entrapment were established.

Recognizing the chaotic condition of our law, M. Olive, in *Entrapment in Tennessee*, 45 Tenn.L.Rev. 57, 88 [2] (1977), makes this startling comment:

Indeed, it is almost beyond comprehension that the Tennessee Supreme Court should allow such a state of affairs to continue.

What is "almost beyond comprehension" is the fact that this is the first case to come before us in the five-year service of the Court, as presently constituted, wherein this issue has been presented for determination. We welcome an opportunity to clarify, harmonize and modernize our law. This is a foremost duty of this Court.

The status of our law is best exemplified by the charge given in the case by an able and experienced criminal judge:

[E]ntrapment of a defendant is not recognized in Tennessee as such as a defense to a crime. On the other hand, if the proof shows that the whole machinery to violate the law originated in the minds of the officers of the law or their agents and if the accused is instigated, induced, or lured by an officer of the law or other person for the purpose of prosecution, into the commission of a crime which he otherwise had no intention of committing, he may not be convicted of the offense. Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent.

■ Thus, we have the spectacle of a trial judge, under a sworn constitutional oath to "declare the law" (Article VI, Section 9, Constitution of Tennessee), solemnly instructing a jury that entrapment *is not* a defense and that entrapment *is* a defense. The trial judge is a "witness as to the law" and a witness will not be heard simultaneously to affirm and disavow a fact and "[c]ontradictory statements of a witness in connection with the same fact have a result of cancelling out each other." *Tibbals Flooring Co. v. Stanfill*, 219 Tenn. 498, 507, 410 S.W.2d 892, 896 (1967).

Two questions arise, *i. e.*, where does a charge such as this leave the jury and why would an able trial judge give such conflicting instructions. The answer to the first is simple: confused. The answer to the second is that the trial judge is bound to follow the appellate courts and, in that context, he had no other choice. His charge was a correct statement of our inconsistent rule of law. By our decisional law we have entrapped the trial judge. Hence, the necessity for this opinion.

### B. *Tennessee Decisional Law*

We start our analysis with *Hyde v. State*, 131 Tenn. 208, 174 S.W. 1127 (1914), erroneously but consistently cited for the proposition that this Court has rejected the entrapment defense. The defense of entrapment was not even raised in *Hyde*.

A physician was found guilty of the unlawful sale of morphine, based upon the testimony of an undercover agent for the State. He approached the doctor and obtained from him a prescription for an alleged but nonexistent friend. Among other defenses, the defendant later contended that the conviction could not stand because the sale was "made by means of the solicitation of [a state agent], for the purposes of a criminal prosecution." 131 Tenn. at 217, 174 S.W. at 1130. The Court held that "such acts of government agent do not absolve the defendant's act of criminality,"

---

**2.** This is a most excellent and exhaustive article and we commend it for further background information and analysis.

*Id.*; that the fact that the "sale was induced for the purpose of securing inculpatory testimony," *Id.* at 219, 174 S.W. at 1130, was no excuse; and by quotation from a New York case, that the agent's conduct "had no necessary connection with his violation of law" because "[h]e exercised his own violation (sic), independent of all outside influence or control." *Id.* The facts were not fully developed; this may or may not have been a proper case for a reversal based on entrapment—probably not.

The progenitor of our peculiar and perplexing "no entrapment—entrapment" defense is *Thomas v. State*, 182 Tenn. 380, 385, 187 S.W.2d 529, 530 (1945), wherein the Court, citing *Hyde, supra*, declared that entrapment was not a defense in Tennessee, because "the only 'inducement' was an agreement to pay the seller [of intoxicating whiskey] the price he demanded, which yielded him a handsome profit." Under the facts as recited by the Court, this was not a case of entrapment, but merely legitimate police activity designed to determine the existence of unlawful conduct. The predisposition of the defendant was not discussed, leaving the case decided on the simplistic basis of mere inducement resulting in no entrapment, coupled with a holding that even if entrapment had occurred this was not a defense.

By dicta, and without any discussion, the Court in *Palmer v. State*, 187 Tenn. 527, 216 S.W.2d 25 (1948), and *Goins v. State*, 192 Tenn. 32, 237 S.W.2d 8 (1951), again noted that entrapment was not a defense under Tennessee law.

R. Kendrick, in the *1960 Survey of Criminal Law and Procedure*, 13 Vand.L.Rev. 1059, 1063, after discussing a case where the defense of entrapment was not raised, made these apt comments:

> It is difficult to believe, however, that the very desirable and generally acceptable concept of entrapment would never be utilized by Tennessee Courts. Whereas traps are justified in catching those bent on crime, it is intolerable for the state to use its own officers, or agents provocat-

eur, to instigate crimes by sowing the seeds of criminal ideas in innocent minds and thereby to bring about offenses that otherwise would not have been committed.

In *Hagemaker v. State*, 208 Tenn. 565, 347 S.W.2d 488 (1961), we reached the zenith of our confusion. In this burglary case, the Court at the very outset, declared "[i]t is clearly established that the doctrine of entrapment is not recognized in this State." 208 Tenn. at 567, 347 S.W.2d at 489. Defendants admitted their participation but contended that they were led into the crime by a police informer. The informer approached defendants at a tavern where they were drinking. Money was mentioned and the informer led them to the site of the burglary, and, at his suggestion, they entered. When they arrived the sheriff and his deputies were secreted in the building. After the entry they converged upon the defendants and an arrest and prosecution ensued.

The Court found that the informer went into the tavern "with the purpose of luring these defendants into the commission of this alleged burglary." The plant superintendent had participated in the prearranged plan to apprehend these defendants.

After having declared that entrapment was not a defense under Tennessee law, the Court, by quotation from 22 C.J.S. Criminal Law § 45, gave the first comprehensive statement of the defense of entrapment to be found in our reported decisions:

> One who is instigated, induced, or lured by an officer of the law or other person, for the purpose of prosecution, into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of "entrapment." Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent.[3] 208 Tenn. at 570, 347 S.W.2d at 490.

---

**3.** The trial judge's charge in the instant case was taken verbatim from this text, preceded, as in *Hagemaker*, by an instruction that entrapment is not a defense in Tennessee.

Thereafter, the Court held that "these defendants were lured into the commission of the offense by the informer and the superintendent of the cement plant," 208 Tenn. at 571, 347 S.W.2d at 491, and that they were not trespassers, without which there could be no burglary.

It was observed by G. Parker and R. Kendrick, in *Criminal Law and Procedure— 1964 Tennessee Survey*, 18 Vand.L.Rev. 1131, 1137 (1965):

> Although the trespass point could be decided on the basis of the law of burglary . . . there seems little doubt that the court was applying the doctrine of entrapment in Tennessee.

The Court reversed and dismissed; however, it is not entirely clear whether it was on the basis of entrapment or because of a missing element in a prosecution for burglary. Thus, as a result of *Hagemaker*, both positions are arguable, and Tennessee law remained in a state of confusion.

The same year the Court decided *Roden v. State*, 209 Tenn. 202, 352 S.W.2d 227 (1961), again holding that entrapment is not a defense under Tennessee law. More importantly, the Court held that *Hagemaker* was decided on the basis of a missing element in a burglary prosecution. Having held that entrapment was not a defense, this disposed of "[t]he whole of the appellant's argument on appeal" and there was no necessity to make further comment. However, the Court again quoted with approval from the Corpus Juris language of *Hagemaker, supra*, after which the Court said:

> [The police agent] in no way *induced or lured by deception, trickery or artifice* the commission of the crimes charged in the indictment. He did, while acting in good faith, *furnish the opportunity for the commission thereof by the defendant who had the requisite criminal intent* as evidenced by prior acts and deeds. (Emphasis supplied). 209 Tenn. at 207, 352 S.W.2d at 229.

The proof as outlined in the Court's opinion did not support a defense of entrapment; however, it is implicit from the language used, that had the police agent "induced or lured by deception, trickery or artifice" the commission of a crime by one who did not have "the requisite criminal intent," the results would, or might, have been different.

In *Warden v. State*, 214 Tenn. 398, 381 S.W.2d 247 (1964), this Court again stated that the doctrine of entrapment is not recognized in Tennessee.

The last pronouncement by this Court in the area of entrapment came in *Williams v. State*, 218 Tenn. 359, 403 S.W.2d 319 (1966). Again holding that entrapment was not a recognized defense in Tennessee, the Court, without citation of authority, stated:

> The most that can be said of the entrapment doctrine in Tennessee is that it is a means to a defense where the method of entrapment serves to eliminate from the State's case one of the essential elements of the crime sought to be proved. 218 Tenn. at 366, 403 S.W.2d at 323.

Apparently, this is the construction the Court placed on *Hagemaker, supra*.

The decisions of the Court of Criminal Appeals, being bound by those of this Court, have tended to perpetuate and apply the confusion. To our knowledge, the first entrapment case to come before that Court was *Shadden v. State*, 488 S.W.2d 54 (Tenn. Cr.App.1972), wherein the Court, after holding entrapment was not a defense, merely paraphrased *Roden, supra*.

In *Halquist v. State*, 489 S.W.2d 88 (Tenn. Cr.App.1972), the Court again rejected the defense.

The last published pronouncement by the Court of Criminal Appeals came in the case of *Scalf v. State*, 565 S.W.2d 506 (Tenn.Cr. App.1978). There, according to the Court of Criminal Appeals, this Court, in *Hagemaker, supra*, and *Williams, supra*,

> established the rule that if the actions of the officer induce a person to commit a crime which he had no intent to commit

then he may not be convicted because of the absence of an essential element—intent. 565 S.W.2d at 508.

While we are not entirely in agreement that *Hagemaker* and *Williams* established this rule, we do view this abbreviated statement as being the most progressive conclusion reached in this area.

Two unreported decisions by the Court of Criminal Appeals are of interest. In *Farner v. State* (Knoxville, Oct. 11, 1974), the Court, speaking through Judge Russell, who also authored the opinion in the instant case, found the charge given by the trial judge "to reflect precisely the current state of the law in Tennessee." We agree. However, he made this significant comment:

> [A] defendant should be permitted to develop all the facts tending to negate criminal intent, or any other essential element of a crime. Whether we say that it is an "entrapment" defense or not is not decisive.

This view was no doubt prompted by the fact that, while the appellate courts of Tennessee consistently have shunned the entrapment defense and declared that it is not available, they have applied a sort of *de facto* entrapment under which an entrapment defense has been validated on an *ad hoc* basis. In some cases this has taken the form of a declaration of the absence of a material element; in others the defense has failed simply because the facts did not make out the defense.

We think it is time to end the charade and call entrapment, entrapment: to say unequivocally it is a defense in Tennessee; to determine the precise nature of the defense, the criteria by which it should be gauged, and the burden of proof.

### C. *Decisions of the Supreme Court of the United States*

We turn you now to the major entrapment decisions of the Supreme Court of the United States.

The defense of entrapment was first recognized by the Supreme Court in *Sorrells v.* *United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), in an opinion by Chief Justice Hughes. The Court noted the settled law that "merely [to] afford opportunities or facilities for the commission of the offense does not defeat the prosecution." 287 U.S. at 441, 53 S.Ct. at 212, 77 L.Ed. at 416. However, "[a] different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." 287 U.S. at 442, 53 S.Ct. at 212, 77 L.Ed. at 417.

The Supreme Court reversed and remanded, holding that entrapment was a jury issue. Justice Roberts, joined by Justices Brandeis and Stone, filed a partial dissent favoring a reversal and dismissal of the case. Without so labelling it, they adopted the objective view, discussed hereinafter, holding that "courts must be closed to the trial of a crime instigated by the government's own agents" without regard to the "demerits of the defendant or his previous infractions of law." 287 U.S. at 458–459, 53 S.Ct. at 219, 77 L.Ed. at 426.

The dissent views the defense of entrapment as being founded "in the public policy which protects the purity of government and its processes." This is the basic theory undergirding the objective test of entrapment. Justice Roberts articulated his views:

> Society is at war with the criminal classes, and courts have uniformly held that in waging this warfare the forces of prevention and detection may use traps, decoys, and deception to obtain evidence of the commission of crime. Resort to such means does not render an indictment thereafter found a nullity nor call for the exclusion of evidence so procured. But the defense here asserted involves more than obtaining evidence by artifice or deception. Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or

fraud of the officer. 287 U.S. at 453–54, 53 S.Ct. at 217, 77 L.Ed. at 423.

The essential difference between the majority and minority views is that the former focused upon the predisposition of the defendant, which is the "subjective" approach, whereas the minority focused upon the activities of the government, which is the "objective" approach. This difference was to carry forward in ensuing opinions.

The views of the Supreme Court were further solidified in *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), a case involving persistent solicitation by an informer, in the face of obvious reluctance, resulting not only in procurement of a source of narcotics, but also in inducing defendant to return to narcotics addiction after he had "shook" the habit.

The theme of the Court opinion emerges at the very outset. We quote with approval:

The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, "A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." 356 U.S. at 372, 78 S.Ct. at 820, 2 L.Ed.2d at 851.

The Court emphasized that merely affording an opportunity for the commission of crime does not constitute entrapment, which may only occur "when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials." (Emphasis in original) *Id.*

Mr. Justice Frankfurter's separate opinion is pertinent to the discussion.

[C]ourts refuse to convict an entrapped defendant, not because his conduct falls outside the proscription of the statute, but because, even if his guilt be admitted, the methods employed on behalf of the Government to bring about conviction cannot be countenanced. 356 U.S. at 380, 78 S.Ct. at 824, 2 L.Ed.2d at 855.

A quarter of a century later the Supreme Court in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), further expanded and solidified its views. The *Sorrells* dichotomy of predisposition *vis-a-vis* government instigation is continued in this opinion.

The Court recognized that "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction," 411 U.S. at 431–32, 93 S.Ct. at 1643, 36 L.Ed.2d at 373; however, the facts of this case did not justify such a holding.

Standing firmly behind *Sorrells* and *Sherman*, the Court declared that these cases "held that the principal element in the defense of entrapment was the defendant's predisposition to commit the crime." 411 U.S. at 433, 93 S.Ct. at 1648, 36 L.Ed.2d at 374. Thus, the subjective test of the defense of entrapment appeared to crystalize as the applicable gauge in the federal system. The defense of entrapment was not available to a defendant whose predisposition to commit the crime was established.

The Supreme Court's latest pronouncement came in *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), wherein the cleavage within the Court was so pronounced that the Court could not agree on an opinion. The plurality opinion authored by Justice Rehnquist and concurred in by Chief Justice Burger and Justice White reiterates the holding of *Russell* that the established predisposition of the defendant precludes reliance upon the defense of entrapment, and says that this rule applies, even in the face of outrageous police conduct.

Justice Powell and Blackmun concurred in the results in a separate opinion, taking the position that *Russell* announced no such absolute rule. Specifically, Justice Powell said:

I am unwilling to conclude that an analysis other than one limited to predisposition would never be appropriate under due process principles. 425 U.S. at 493, 96 S.Ct. at 1651, 48 L.Ed.2d at 121.

Justices Brennan, Stewart and Marshall[4] dissented, taking the position that the "subjective" approach of *Sorrells, Sherman* and *Russell*

> focuses upon the conduct and propensities of the particular defendant in each case and, in the absence of a conclusive showing, permits the jury to determine as a question of fact the defendant's "predisposition" to the crime. The focus of the view espoused by Mr. Justice Roberts, Mr. Justice Frankfurter, and my Brother Stewart "is not on the propensities and predisposition of a specific defendant, but on 'whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power' . . . . Under this approach, the determination of the lawfulness of the Government's conduct must be made—as it is on all questions involving the legality of law enforcement methods—by the trial judge . . . ." 425 U.S. at 496–97, 96 S.Ct. at 1653, 48 L.Ed.2d at 122–23.

### D. *The Subjective versus Objective Test*

Thus, while entrapment is a defense in the courts of the federal system the subjective test prevails by the barest margin. This leaves us with no firm guidance on whether the subjective or objective test is the better approach.

Our problem is accentuated by virtue of the fact that many of the justices of the Supreme Court adhere to the objective test.

By dissent in *Sorrells, supra,* Mr. Justice Roberts, joined by Justices Brandeis and Stone, made a compelling argument for the objective test:

> To say that such conduct by an official of government is condoned and rendered innocuous by the fact that the defendant had a bad reputation or had previously transgressed is wholly to disregard the reason for refusing the processes of the court to consummate an abhorrent transaction. It is to discard the basis of the doctrine and in effect to weigh the equities as between the government and the defendant when there are in truth no equities belonging to the latter, and when the rule of action cannot rest on any estimate of the good which may come out of the conviction of the offender by foul means. The accepted procedure, in effect, pivots conviction in such cases, not on the commission of the crime charged, but on the prior reputation of some former act or acts of the defendant not mentioned in the indictment.
>
> The applicable principle is that courts must be closed to the trial of a crime instigated by the government's own agents. No other issue, no comparison of equities as between the guilty official and the guilty defendant, has any place in the enforcement of this overruling principle of public policy. 287 U.S. at 459, 53 S.Ct. at 219, 77 L.Ed. at 426.

On the other hand we see merit to the views in Chief Justice Warren's majority opinion in *Sherman*:

> On the one hand, at trial the accused may examine the conduct of the government agent; and on the other hand, the accused will be subjected to an "appropriate and searching inquiry into his own conduct and predisposition." 356 U.S. at 373, 78 S.Ct. at 821, 2 L.Ed.2d at 851.

And yet this very procedure, fair and reasonable at first blush, suffers from serious flaws. First, it ignores the underlying theory of the defense of entrapment, *i. e.,* the public policy considerations aimed at deterring unfair police activity. It operates to create sandwiched trials, or trials within trials, where the details of other offenses become pertinent. If not carefully controlled by the trial judge, it would seriously erode the wholesome results of *State v. Morgan,* 541 S.W.2d 385 (Tenn.1976), in all cases where entrapment is imposed as a defense.

---

4. Justice Stevens did not participate.

A basic and difficult problem with the subjective test is articulated by Mr. Justice Frankfurter, in his separate opinion in *Sherman* :

The defendant must either forego the claim of entrapment or run the substantial risk that, in spite of instructions, the jury will allow a criminal record or bad reputation to weigh in its determination of guilt of the specific offense of which he stands charged. Furthermore, *a test that looks to the character and predisposition of the defendant rather than the conduct of the police loses sight of the underlying reasons for the defense of entrapment.* (Emphasis supplied). 356 U.S. at 382, 78 S.Ct. at 826, 2 L.Ed.2d at 857.

Justice Stewart, dissenting in *Russell*, reasons that the Roberts-Frankfurter objective approach is the only one consistent with the defense; that courts must focus upon the conduct of government agents as opposed to the predisposition of the defendant, or a determination that he was "otherwise innocent." He points out that focusing upon the disposition or innocence of the defendant is misleading; that his commission of the act establishes that he is not innocent; that his inducement does not make him any more or less innocent and, therefore, the significance must be on the conduct of the government agents, and not on the predisposition of the defendant. Therefore, he contends:

The purpose of the entrapment defense, then, cannot be to protect persons who are "otherwise innocent." Rather, it must be to prohibit unlawful governmental activity . . . . 411 U.S. at 442, 93 S.Ct. at 1648, 33 L.Ed.2d at 379.

Finally, Justice Stewart reasons:

More fundamentally, focusing on the defendant's innocence or predisposition has the direct effect of making what is permissible or impermissible police conduct depend upon the past record and propensities of the particular defendant involved. Stated another way, this subjective test means that the Government is permitted to entrap a person with a criminal record or bad reputation, and then to prosecute him for the manufactured crime, confident that his record or reputation itself will be enough to show that he was predisposed to commit the offense anyway. 411 U.S. at 443–44, 93 S.Ct. at 1648, 36 L.Ed.2d at 380.

While the Tennessee appellate courts have never written a definitive opinion on entrapment and the relative merits of the subjective *vis-a-vis* objective tests have not been given consideration, to the extent that entrapment has been discussed the citations are to cases holding to the subjective test and, without applying particular nomenclature, this is what the trial judge charged in the instant case.

Research indicates that the subjective test is in use in the majority of the state jurisdictions; however, a number of them have adopted the objective test. As noted by R. Rossum, in *The Entrapment Defense and the Supreme Court*, 7 Memphis St.L. Rev. 367, 386–87 (1977), the academic community has overwhelmingly endorsed the objective test. Out of twenty-five law review articles written on the subject since 1950, only two have favored the subjective test. Moreover, this is the test adopted by the Model Penal Code, Section 2.13 (1962) and by the proposed Federal Criminal Code (1971).

■ Cogent reasons favor the adoption or rejection of either test. If we were deciding in a vacuum, unaided by precedent, and approaching the matter as a case of first impression, we would tend to favor the objective test—and we do not rule this test out in perpetuity. This, however, is not the precise situation. Our own courts, to a limited extent, have applied the subjective test. The Supreme Court, by a slender margin, follows the subjective test, as do the majority of American jurisdictions. The Sixth Circuit uses the same test. While we are not bound by the federal rule or the rule of the sister states, we do feel that there is merit in uniformity. A difference between a rule of law followed in the federal trial courts and our own state courts is always undesirable.

At this time—and for the time being—we adopt the subjective test and will observe and review the results. Should experience so indicate, or should the federal rule change, this Court can and will give consideration to an appropriate revision of the rule we announce. In the interim, the adoption of entrapment, as a defense, is a sound and progressive improvement in the administration of criminal justice in Tennessee.

### E. *The Rule and Its Construction*

In adopting the subjective test of entrapment we deal in generalities and not absolutes.

As a general rule of criminal practice and procedure entrapment occurs when law enforcement officials, acting either directly or through an agent, induce or persuade an otherwise unwilling person to commit an unlawful act; however, where a person is predisposed to commit an offense, the fact that the law enforcement officials or their agents merely afford an opportunity does not constitute entrapment.

We qualify this, however, by the admonition that "outrageous police behavior in light of surrounding circumstances," the "over-involvement" of the police or the intensity of their activities, could reach such a level that due process is so offended that predisposition is not relevant. *See Russell, supra, Hampton, supra* (Powell dissenting).

### F. *Trial Procedure*

Entrapment is an affirmative defense which may be raised upon a plea of not guilty. The burden rests upon the accused to make out a prima facie case that he was induced or persuaded into the commission of the offense. Upon such a showing the burden shifts to the State to prove beyond a reasonable doubt that the defendant had a predisposition to commit the offense. *United States v. Jones,* 575 F.2d 81 (6th Cir. 1978).

If the evidence on the issue of entrapment is in dispute, the question must be submitted to the jury. If uncontroverted, it is a question of law to be decided by the Court. *Id.*

Predisposition may be established by evidence of prior crimes of a similar character, but within the time frame of *State v. Morgan, supra,* or by evidence, direct or circumstantial, that the accused was ready and willing to engage in the illegal conduct in question. Evidence of the defendant's reputation bears upon the issue. A finding of predisposition should be based on the totality of the circumstances.

The trial judge should instruct the jury that evidence on predisposition may be considered only in connection with the defense of entrapment and may not be considered on the question of guilt or innocence.

We append hereto a model form for use by trial judges. *See* 1 *Federal Jury Practice and Instructions,* Section 13.09 (1978 Supplement) (3rd ed. Devitt & Blackmar 1977).

### G. *Application to the Case at Bar.*

We have reviewed the record with painstaking care. While it shows beyond doubt that the agents and representatives of the State made false and fraudulent representations, and solicited and requested defendant's participation in criminal activity, it does not show that he was induced into soliciting the agents to commit any criminal offense in violation of Section 39–115, T.C.A. This is the offense with which he was charged. Entrapment can never be available as a defense to any criminal charge originating in the voluntary and wilful action of the defendant.

It will be borne in mind that the whole purpose of the undercover operation was to connect and convict the defendant of violation of the Federal Gun Control Act. In connection with this scheme, but not as a planned part thereof, the defendant allegedly solicited the robbery of a grocery store, a wholly independent criminal act.

Entrapment is never available to one whose action was voluntary and wilful. This follows from the fact that an indis-

pensable element of the defense of entrapment is the action of the government in luring or inducing the commission of a crime.

■ Thus, where solicitation is the gist of an offense and an indispensable element thereof, the defense of entrapment is not available. One may not be solicited into soliciting. He is either the solicitor or the solicitee. If the former, he may not be the latter. Therefore, we overrule this assignment.

■ Further, the defense of entrapment is in the nature of a plea of confession and avoidance. He has a right to raise this affirmative defense under a plea of the general issue; however, prior to submission to the jury, the trial judge may require that he elect whether he chooses to have the jury believe he did not commit the crime or was entrapped into committing it.

### III.

### The Confrontation Issue

#### A. Factual Background

Appellant mounts a strong attack on the admissibility of testimony by the two agents of the Bureau of Alcohol, Tobacco and Firearms, Department of the Treasury. He urges upon the Court the proposition that the introduction of five transcripts of taped conversations between the petitioner and other nontestifying persons was violative of his right of confrontation under the Constitutions of the United States and the State of Tennessee.

A brief examination of the testimony is essential to a proper understanding and discussion of this issue.

On February 25, 1976, Helen Risler contacted petitioner by telephone and set up a meeting for the following day. This call was recorded, without the knowledge of petitioner, and a transcript of the conversation was introduced by the testimony of Agent Hofer. It contained no incriminating information. It is important only to the extent that it set up a meeting for the next day. However, it could only be established by the testimony of Helen Risler.

At 9:00 a. m., on February 26, 1976, petitioner was seen going into Helen Risler's room at the Holiday Inn, Golden Gateway in Chattanooga. There is no record of this conversation. At 2:30 p. m., that same day, the Rislers and petitioner met in the motel parking lot. Helen Risler was wired; Agent Hofer monitored and presented the transcript at trial. The conversation—as was true of most of the recorded contacts— was primarily about guns. It is to be remembered that illegal traffic in guns was the principal matter under investigation. With no prelude, the conversation suddenly turned to petitioner looking over an unnamed grocery store, a discussion of Halloween masks and other extremely vague conversations about a robbery.[5] It is obvious that there were other prior conversations about the robbery or robberies, but they do not appear in the record.

On February 27, 1976, the Rislers and petitioner met on Market Street near Ken's Auto Service. Helen was wired; Agent Bradley monitored but was able to record only a portion because of distances. This recording does not appear in the record.

On March 2, 1976, petitioner and Helen Risler met at the Waffle House on Ringgold Road. Agent Bradley monitored and testified to a transcript. Again, there was conversation about guns and apparently about the liquor store located on Market Street and about the grocery store. Bradley introduced a transcript of this conversation.

On March 11, 1976, the Rislers and Agent Hofer had lunch at Nikki's Restaurant on

5. These conversations, absent the testimony of Helen Risler, are extremely difficult to follow. The primary thrust of the investigation was a violation of the Federal Firearms Act. Also, petitioner was indicted both for soliciting the robbery of the Red Food Store and of a liquor store. He was found not guilty of the latter charge. These illegal objectives are interspersed, intermingled and comingled throughout and at times it is virtually impossible to determine which robbery was being discussed. Additionally there were numerous gaps where the conversation was unintelligible.

Cherokee Boulevard in Hamilton County. The petitioner came over and joined them and was introduced to Agent Hofer. Hofer was wired and Agent Bradley monitored this conversation. It was introduced by Hofer. A part of this conversation was not transcribed.

On March 12, 1976, the Rislers, Hofer and petitioner met at the Krystal Restaurant on Ringgold Road in East Ridge. Agent Bradley monitored and recorded. The transcript of this conversation was introduced by Agent Hofer. This was not the entire conversation and the tape had some electronic interference. There was some conversation about the robbery at the stores.

Finally, on March 25, 1976, there occurred the conversation upon which the indictment is specifically predicated. This conversation took place at Easton Restaurant at East Ridge. Participating were the petitioner, Britt Risler and Hofer. Hofer was wired but the resulting recording was not audible. He testified in narrative form. This testimony was sufficient to establish that a robbery was planned; however, it does not establish petitioner's guilt of solicitation.

No error is assigned on the sufficiency of the evidence to establish a charge of solicitation and a verdict thereon. We, therefore, have not analyzed the record from a standpoint of sufficiency. We point out for the guidance of the trial court and the district attorney general on remand that the nebulous nature of these conversations with respect to a solicitation, together with the failure of the State to call Helen Risler, the principal figure in this investigation, is disturbing.

As a prelude to further discussion it should be pointed out that at all times Helen Risler was in the keeping—in fact the custody of the State—she was in the Hamilton County Jail.

B. *Applicable Law*

The Court of Criminal Appeals, relying upon *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), and *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), concluded

that there was no violation of the defendant's right of privacy under the Fourth Amendment to the Constitution of the United States.

As to the petitioner's Sixth Amendment right to confrontation, the Court of Criminal Appeals could "see no confrontation problem under the facts of this case." It held that "[a]n extrajudicial statement is inadmissible as hearsay only when offered as evidence of the *truth* of the matter to which it relates," but is admissible "if offered merely to show the *fact* of its having been made." Citing *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Court held that "[a]dmissible, non-hearsay evidence does not violate the Sixth Amendment confrontation clause."

Judge O'Brien lodged a strong dissent, challenging the applicability of *Dutton*, pointing out that the hearsay evidence rule may not be equated with the Sixth Amendment right of confrontation. He correctly points to the holding of the Supreme Court in *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), in which the Court readily acknowledged "that hearsay rules and the Confrontation Clause are generally designed to protect similar values," but admonished that the overlap between the two is not complete.

The record reflects that when the federal court case involving these tapes came before Judge Wilson, of the Eastern District, the government was only allowed to present the tapes covering the conversations between Hofer and the witness. The federal case reached the United States Court of Appeals for the Sixth Circuit and is reported under the caption, *United States v. Jones*, 575 F.2d 81 (6th Cir. 1978). The issue of confrontation apparently was not raised on the federal appeal. Thus in federal court only those conversations in which Hofer participated were allowed and obviously the remainder were rejected. If we follow the same rule, the conversations of February 25, February 26, February 27, and March 2 would be rejected, and testimony

would be permitted as to the conversations of March 11, March 12, and March 25, because Hofer was a party to these.

The disturbing factor in this lawsuit is that the State precipitated this problem by declining to call an available witness and then attempting to piggy-back her testimony into the record through two listeners.

This led the Court of Criminal Appeals, and all counsel, into the error of treating this as both a confrontation and a hearsay evidence problem. Actually, it is neither.

■ We first look to so much of the taped conversations as relates to questions and answers by Helen Risler. These are not hearsay because her remarks were not offered or intended as substantive evidence designed to prove the truth of the matter asserted therein and there was no requirement or need arising from the offer of her statements that they be taken as true. Indeed, many of the statements made by her were admittedly false and the State neither asked nor wanted the jury to believe her. These statements must be tested solely by the State's primary objective of bringing before the jury the statements and declarations made by the petitioner. He, and he alone, was the State's target; she was the agents' ally, albeit, a most undesirable one.

■ The issue of confrontation does not arise as to her. The mere fact that cross-examining her would have been a defense lawyer's delight, and that this opportunity did not present itself, does not operate to add constitutional dimension to the situation. As a practical proposition, her conversational activities added nothing to the prosecutor's case.

■ The hearsay evidence rule rests primarily upon the basis that the declarant is not present and available for cross-examination. It is for this reason that where the alleged declarant is a criminal defendant, strictly speaking the rule does not come into play. The mere fact that an assertion is

offered to prove its truth and that cross-examination would be helpful[6] does not make the statement hearsay where a party defendant in a criminal action is the declarant.

■ In Paine, *Tennessee Law of Evidence*, Section 54, it is set forth that "[a]n admission is hearsay because it is usually unsworn and uncross-examined and is offered as substantive evidence." Therefore, says Mr. Paine, "[w]e make an exception . . . since we believe that the party-declarant is estopped from claiming that his prior statements are unreliable." This accords with Tennessee Law.

We note that Rule 801, Federal Rules of Evidence, Section (d)(2), provides that a statement is not hearsay if:

The statement is offered against a party and is (A) his own statement.

This appears to us as a better view;[7] however, whether a criminal defendant's own statement be treated as an exception to the hearsay evidence rule, or as an admission not governed by the rule, the result is the same. The admission is competent proof.

■ Applying these rules to the instant case, we hold that the tape recordings and compared transcripts are admissible and may be presented in evidence by any witness who was present during their recording or who monitored the conversations, if he was so situated and circumstanced that he was in a position to identify the declarant with certainty, and provided his testimony in whole, or in part, comports with other rules of evidence.

In all such cases the jury should be instructed that only the statements, admissions and declarations of the declarant may be considered in the question of guilt or innocence. Further any statement made by a nontestifying party to the conversation which tends to be prejudicial to the defendant must be redacted, unless admissible under some other rule of law.

6. *See* Paine, *Tennessee Law of Evidence*, Section 47 (1974).

7. *See* Section 29 Am.Jur.2d, Evidence, Section 600, for enunciation of this view and for general comment on the admissibility of declarations and admissions.

We therefore overrule the assignment relating to confrontation. The confrontation issue cannot arise except when the declarant is not available for cross-examination, or phrasing it another way, it may not arise where the declarant is the party to the lawsuit, except to the extent of cross-examining the witness to the declaration. Here full opportunity was given and used to cross-examine the witnesses who testified to the statements made by the defendant.

## IV.

### The Missing Witness

The State failed to call either of the Rislers as a witness.

The defendant tendered, and the trial judge refused, a special request in the following language:

Failure to call an available witness possessing peculiar knowledge concerning facts essential to party's cause, direct or rebutting, or to examine such witness as to facts covering his special knowledge, especially if witness be naturally favorable to party's contention, relying instead upon evidence of witnesses less familiar with the matter, gives rise to an inference that testimony of uninterrogated witness would not sustain contentions of such party.

This is a correct statement of the prevailing law in this jurisdiction. See Paine, *Tennessee Law of Evidence*, Sec. 46. The failure to give this charge, in the context of this case, was plain, palpable and reversible error.

The witness, Helen Risler, the prime mover on this entire entrapment operation, was very much available and most assuredly was "within the keeping" of the State, since she was in the Hamilton County Jail.

The State insists that the defendant could have called her. The defendant is under no obligation to call two witnesses that the State had paid a total of $6,760.00 to build a case against him. The State's position in this regard is preposterous.

It is true, as maintained by the State and held by the Court of Criminal Appeals, that the State is under no obligation to produce every possible witness. *Hicks v. State*, 539 S.W.2d 58 (Tenn.Cr.App. 1976). The *quid pro quo* is that the defendant may be entitled to a missing witness charge.

That Helen Risler possessed "peculiar knowledge concerning facts essential" to this case, there can be no doubt. She was the only witness to the entire sequence of events. The two witnesses called were only partially familiar.

She was the only witness who could explain the gaps or breaks in the tapes, the interruptions, the conversations and portions of conversations that transpired, the substance of the unrecorded conversations, the vague and nebulous nature of the tapes, and the enigmatic expressions.

The State simply made a command decision not to put her on. It was indicated at the trial it was because she had a felony conviction. In this regard, the record shows a conviction in federal court on her plea of guilty to a charge of obstructing justice and a sentence of five years in federal penitentiary; that she was carrying a 257 magnum when arrested on this charge; that she was on probation after passing 40–50 worthless checks; that she had pleaded guilty to two cases of forgery, and in general that she had an unsavory background and character. Her end of the various conversations shows that her spoken English was spiced with vulgarities and crudities. She was not exactly what one would call a "sweet-smelling geranium."

We sustain this assignment.

## V.

### The Testimony of Defendant's Attorney

The attorney for the defendant presented himself as a witness to testify that before the trial Helen Risler approached him with an offer to disappear and not testify if defendant would give her $3,000.00. The attorney promptly and properly reported her action to the federal judge

and, after further negotiations with her, with the full cooperation of the United States Attorney at Chattanooga, she was arrested on a charge of obstructing justice. Upon a plea of guilty she was given five years in federal penitentiary.

The trial judge rejected this proof.

We concur in his action. While this would have been a proper subject for cross-examination of Helen Risler, as affecting her credibility, in view of her failure to testify, it only served to inject a collateral issue.

We agree with the Sixth Circuit that this matter "is disturbing." 575 F.2d at 87. However, she is now paying a severe penalty for it.

This assignment is overruled.

Reversed and remanded.

BROCK, C. J., and FONES, COOPER and HARBISON, JJ., concur.

### APPENDIX

The defendant contends that he was the victim of entrapment as to the offense[s] charged. As used in the law, "entrapment" means that law enforcement officials, acting either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act. On the other hand, where a person is predisposed to commit an offense, that is, ready and willing to violate the law, the fact that government officials or their agents merely afford opportunities for him to do so does not constitute entrapment.

Inducement by law enforcement officials may take many forms including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship. A solicitation, request or approach by law enforcement officials to engage in criminal activity, standing alone, is not an inducement. Law enforcement officials are not precluded from utilizing artifice, stealth and strategem, such as the use of decoys and undercover agents, in order to apprehend persons engaged in criminal

activities, provided that they merely afford opportunities or facilities for the commission of the offense[s] by one predisposed or ready to commit it. [They may properly make use of undercover operations, in which they assume false names and false appearances. They may properly assume the roles of members of criminal organizations. They may properly offer or give to the defendant the money which is involved in the commission of the crime itself. And they may properly instigate the offer of money to the defendant.]

If you should find from the evidence in this case that before the alleged offense[s] occurred, government officers or their agents did no more than offer the defendant the opportunity to engage in criminal conduct, there is no entrapment. On the other hand, if you find evidence in this case that the defendant was induced to commit the offense[s] charged, you must go on to consider whether or not the defendant was predisposed to commit the offense[s]—that is, whether he was reading and willing to commit crimes such as are alleged in the indictment, whenever an opportunity was afforded.

In determining whether the defendant had a predisposition to commit the crimes charged, you need not find that he was involved in any prior offenses or criminal conduct. Predisposition may be shown in many ways. The defendant's predisposition or willingness to commit the crimes charged may be shown by evidence of his prior conduct of a similar character or by evidence, direct or circumstantial, that he was ready and willing to engage in the illegal conduct in question. It may be shown by evidence of the defendant's reputation or character. In evaluating this matter of predisposition, you should look to the totality of the circumstances involved in the alleged offense[s] with which the defendant is charged.

[If evidence of prior conduct of the defendant which may be criminal is introduced to show his predisposition or willingness to commit the alleged offense, you may consider such evidence only in connection

with your determination of the defendant's predisposition or readiness to commit that offense. It is not evidence that he actually committed the crime[s] for which he is now on trial. Moreover, the fact, if it is a fact, that the defendant may have committed prior offenses of a similar character does not by itself require you to conclude that he had the predisposition of readiness to commit the offenses with which he is now charged.]

In summary then, if you find no evidence that the government induced the defendant to commit the crime[s] with which he is charged here, there can be no entrapment. On the other hand, if you find some evidence that the defendant was induced to commit the offense[s] with which he is charged, you must then go on to consider if the defendant was predisposed to commit such an offense[s]. If you find beyond a reasonable doubt that the defendant was predisposed to commit such an offense[s], then you should find that the defendant was not a victim of entrapment. However, if the evidence in the case leaves you with a reasonable doubt whether the defendant was predisposed to commit the offense[s], then you must find him not guilty.

[Just as it is your responsibility to consider each offense and the evidence applicable thereto separately, it is likewise your responsibility to consider the evidence concerning entrapment as to each offense separately.]