IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
APRIL 1997 SESSION

FILED

May 22, 1998

Cecil W. Crowson
Appellate Court Clerk

STATE OF TENNESSEE,        )
                           )        No. 01C01-9605-CC-00208
          Appellee,        )
                           )        Rutherford County
vs.                        )
                           )        Honorable J. S. Daniel, Judge
JAMES CLAYTON YOUNG, JR.,  )
                           )        (Felony Murder)
          Appellant.       )

## DISSENTING AND CONCURRING OPINION

Although I concur in the treatment of most issues and concur in the remand for a new trial, I respectfully depart from the majority on the issue of sufficiency of the evidence to support felony murder and the somewhat related issue of the redaction of the defendant's pretrial statement. For the reasons explained below, I would dismiss the felony murder charge and remand for retrial as to second-degree murder.

To find the defendant guilty of felony murder in this case, the jury had to find beyond a reasonable doubt that the defendant, acting with the culpability to commit a forcible rape, recklessly killed the victim. If the victim consented to the sexual activity, no attempt to rape occurred, and the defendant cannot be convicted of felony murder.

The only evidence that any sexual activity occurred is found in the defendant's statement to the police. According to the defendant, he and Ladd went into the bedroom to engage in sex, and the sexual activity, including the digital penetration and the bondage with handcuffs and a gag, was completely consensual. In his statement, the defendant admits that he wrapped the shirt around the victim's neck and used it as "reins" while he bounced up and down on the victim's back. When the victim began to struggle and thrash about, the defendant was caught up in his fantasy and did not stop. Even when the victim's distress became more

apparent, he did not remove the gag or the shirt. The defendant admitted that he ceased to pull on the shirt only when the victim became limp.

The jury, of course, was entitled to disregard the defendant's account of what transpired. In my view, however, the evidence is entirely circumstantial and speculative without the defendant's statement. The record in this case contains no physical evidence of any sexual activity. Dr. Harlan testified that a digital penetration of the victim's anus would leave no trauma or other physical signs. The autopsy found no bruises nor any other injuries to the victim's genital area. The bruises on his wrists and ankles were consistent with the use of handcuffs, and the scratches and bruises on his chest and back were consistent with a body being dragged across a floor. The doctor could not explain the curious abrasions on his finger tips although he opined that they could not result from just being dragged across a floor. Except for the bruises around the wrists and ankles, the doctor could not say whether the victim's injuries had occurred shortly before or shortly after death. The medical evidence led the doctor to believe that the victim was lying face down with his hands behind his back and that he was strangled from behind. Without the expert opinion evidence as to the victim's level of intoxication at the time of death, which evidence this court has found to be erroneously admitted, the proof of the victim's state of intoxication is merely speculative, as is the suggestion that the victim was unconscious at the time of the handcuffing or the strangulation.

The record demonstrates beyond a reasonable doubt that the defendant's actions resulted in the victim's death. The facts support a finding of second-degree murder based upon a knowing killing, and in my view, first-degree murder based upon premeditation is more readily gleaned from the facts than is first-degree murder based upon the attempt to commit a forcible rape. However, there is insufficient evidence to support a conclusion that the defendant had the intent to commit a rape or that his actions were intended to achieve that result. See Tenn. Code Ann. § 39-12-101(a)(1),(2) (1997). Although there is physical proof that

2

the victim struggled against his bonds and resisted being strangled, that resistance does not necessarily prove that the defendant forced the victim to be bound or take part in the sexual activity. The evidence just as easily supports the defendant's claim of the victim's willing participation in the defendant's bondage fantasy. Even the defendant's post-homicide furtive activity is suggestive only of guilt of a crime of homicide and does not buttress the state's argument for felony murder per se.

Without the defendant's version of events, the jury could only speculate as to what actually occurred during the early morning hours of January 4, 1995. Jurors could only speculate that the victim had become comatose from his heavy drinking and that the defendant "took advantage" of his helpless guest. Other reasonable hypotheses exist. The fact that the victim resisted strangulation neither negates nor excludes the defendant's version of events.

Before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 484, 470 S.W.2d 610, 613 (1971); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1981). A rational jury could draw other reasonable inferences from the facts and circumstances in this record other than the conclusion that the defendant recklessly caused the victim's death during the perpetration of an attempted rape. See Crawford, 225 Tenn. at 484, 470 S.W.2d at 613; State v. McAfee, 737 S.W.2d 304, 305 (Tenn. Crim. App. 1987). Although it is a close question, in my view, the state's evidence does not weave a web of guilt sufficiently strong to convict James Clayton Young of first-degree felony murder in the death of Joseph Ladd.

The import of the majority's position is that the jury may "accept that portion of the defendant's pretrial statement that it deemed credible and reject that which it deemed to be false." I would not have allowed the jury such an eclectic

3

prerogative in a case where the prosecution sponsored the proof in the question and the confessing defendant did not testify. Courts have traditionally afforded the trier of fact the power to assess a testifying witness' demeanor, sincerity, and overall credibility; however, that rule has not been extended to condone capriciously eclectic treatment of a non-testifying defendant's extra-judicial confession. The majority relies upon State v. Gilbert, 612 S.W.2d 188 (Tenn. Crim. App. 1980). Gilbert says that the "jury was entitled to accept that part of the defendant's proof they felt was consistent with truth and reject that portion they believed [was false]." Gilbert, 612 S.W.2d at 190 (emphasis added). However, the Gilbert court was not reviewing the contents of an extra-judicial confession; it was reviewing Gilbert's trial testimony. Moreover, the court was discussing the jury's assessment of the defendant's proof in making a sufficiency-of-evidence determination in which the evidence is viewed in the light most favorable to the state. In the present case, the pretrial confession is part of the state's proof. It is a critical evidentiary component presented by the state in its attempt to carry its burden in proving the defendant guilty of felony murder beyond a reasonable doubt. Furthermore, the jury in the present case had no opportunity to observe the defendant's demeanor while he told his story in person. In my view, Gilbert provides no precedent for concluding that the jury in the present case was entitled to reject the defendant's claim of consensual sexual activity.

Also, the majority relies upon Espitia v. State, 199 Tenn. 696, 288 S.W.2d 731 (Tenn. 1956), but Espitia, in its full breadth, supports the position taken in this separate opinion. In Espitia, the defendant complained of a jury instruction that "'the law presumes to be true'" the damaging parts of Espitia's confession. Espitia, 199 Tenn. at 698, 288 S.W.2d at 732. Thus, when the Espitia court says the jury, in weighing the confession, may "reject[] some part if they desire to do so," it refers to rejecting the inculpatory part, and when it says the jury may give "credit to other parts of the statement if they have a sufficient reason to do so," it refers to exculpatory portions. In the context of the issues that were before the Espitia court,

4

the court's language is not meant to be applied vice versa. Espitia acknowledges that, after a defendant's confession is admitted, if "'the prosecutor can contradict any part of it, he is at liberty to do so . . . .'" Espitia, 199 Tenn. at 700, 288 S.W.2d at 733 (quoting Crawford v. State, 44 Tenn. 190, 194 (1867)). The jury's right to reject the portion of the confession which is favorable to the defendant is conditioned upon "'sufficient grounds for doing so.'" Espitia, 199 Tenn. at 700, 288 S.W.2d at 733. The court added

> If what [the defendant] said in his own favor is not contradicted by evidence offered by the prosecutor, nor improbable in itself, it will naturally be believed by the jury, and they are not authorized arbitrarily to reject it; but still, they are not bound to give it weight on that account, but are at liberty to judge it like other evidence, by all the circumstances of the case . . . .

Id. (emphasis added). It should be noted in passing that Espitia testified in his own defense and repeated much of the information that was admitted through his confession. Espitia, 199 Tenn. at 703, 288 S.W.2d at 735. The supreme court held it was error to charge the jury that the damaging portions of the confession were presumptively true while the prosecutor tried "to discount anything else that was said in the statement." Id.

In view of the foregoing, I would have found the evidence of the predicate felony insufficient to support a conviction of felony murder. Such a result acquits the defendant of first-degree murder and mandates a new trial on second-degree murder and lesser offenses.

Had the majority agreed with me regarding the insufficiency of the evidence to convict the defendant of felony murder, the issue of whether the defendant's pretrial statement should have been redacted and/or whether the jury should have been instructed to disregard the statements made by the interrogating officers would have been effectively moot. For purposes of felony murder, the central and controverted issue was the victim's consent to the defendant's sexual advances. The object of redacting the confession or in giving curative instructions essentially would have been to purge the confession of the officer's innuendo about

5

consent.  In a retrial for second-degree murder, when there would have been no issue of consent to a predicate crime of rape, any need for redaction or curative instructions would be substantially abated.

Of course, the majority's decision remands the case for retrial on felony murder, and in that context, the trial court may well be presented with the redaction-curative instruction issues on retrial.  In my view, the transcript of the defendant's statement does not warrant redaction.  While the officers' interviewing techniques left much to be desired, the jury's duty is to sort out the context of the recorded conversation and judge the weight of what it hears.  See State v. Beasley, 699 S.W.2d 565, 569 (Tenn. Crim. App. 1985); State v. Harris, 637 S.W.2d 896, 898 (Tenn. Crim. App. 1982); State v. Lee, 618 S.W.2d 320, 322-323 (Tenn. Crim. App. 1981); State v. Smith, 612 S.W.2d 493, 498 (Tenn. Crim. App. 1980). The language of our supreme court in State v. Jones, 598 S.W.2d 209, 223 (Tenn. 1980), cited by the majority, does not alter the application of this rule in the context of the present case.  First, in speaking to the redaction, Jones said, "any statement made by a nontestifying party to the conversation which tends to be prejudicial to the defendant must be redacted."  Jones, 598 S.W.2d at 223.  In some of the statements presented against Jones, the covert agent, whose conversation was heard on the tape, did not testify.  However, in the present case, both of the interrogating officers testified at trial.  Second, the entreaty in Jones that "the jury should be instructed that only the statements, admissions and declarations of the declarant may be considered in the question of guilt or innocence," id. (emphasis added), was presented, in context, as dicta.  Moreover, in Jones, the extra-judicial conversations were held, via a covert agency operation, as a part of the government's investigation of Jones's alleged on-going criminal activity.  Jones had no reason to believe he would be accountable for any unrequited innuendo. On the other hand, in the present case, the defendant's confession about his past conduct was the object of the recording.  The defendant knew he was being recorded and that evidence was being gathered to use in convicting him.  He had

6

an incentive to clarify, amend, or reject any interpretations of the facts which he perceived were made unfairly by the officers. In context, the use of the defendant's confession, as obtained through interrogation, was admissible evidence that required no redaction nor any curative instruction.[1]

Moreover, in my view, a requirement that the trial court should redact the confession in this situation improvidently involves the trial court in a difficult, perhaps fact-altering exercise. Unlike the Bruton redaction process, see Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620 (1968), where the court is generally concerned with redacting references to the accused from a co-defendant's statement, a redaction in the present case apparently requires the court to restate questions posed by the interrogators. In some situations, such as when a single answer is given to a compound or complex question, redaction of the question may change the meaning or emphasis of the intended answer. In an interrogation, the contextual meaning of an answer is often found in not only the preceding question, but also in a series of questions and answers. Redaction of such a statement seems a daunting task. I find no error in the trial court declining to redact the statement.

If this case were remanded due to insufficiency of evidence of felony murder, it would be pointless, and perhaps disingenuous, for us to render opinions about the harmlessness of perceived errors even though harmless error analysis would ordinarily be appropriate. Upon retrial for second-degree murder, we would have had no way of knowing whether the proof would be the same as that used in the first trial. The harmlessness of error is a derivative concept emanating from the effect of the error in the context of all of the proof admitted in a trial. Tenn. R. App. P. 36(b) (harmless error analysis to be predicated upon the "whole record"); State

---

[1] The majority's finding of evidence sufficiency depends upon a malignant interpretation of the statement which redaction is designed to remedy. On the other hand, a finding of insufficiency would be predicated upon a finding that even an unredacted confession contained no basis for rejecting the defendant's claim of the victim's consent to sexual activity.

7

<u>v. Neal</u>, 810 S.W.2d 131, 138 (Tenn. 1991).

However, assuming sufficiency of the felony murder evidence, as is now the law of the case, I concur in the court's treatment of the remaining issues on appeal, including the finding of cumulative reversible error, despite my departure from the majority on the redaction issue.

For the foregoing reasons, I concur in the remand for new trial but respectfully dissent from the decision to have the defendant retried for first-degree murder.

_____
CURWOOD WITT, JUDGE

8