IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs at Knoxville, October 30, 2001

## CARLOS HAYWOOD v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-22299       Chris Craft, Judge**

---

**No. W2001-00451-CCA-R3-PC - Filed December 17, 2001**

---

The Appellant, Carlos Haywood, appeals from the dismissal of his petition for post-conviction relief. Haywood was convicted by a Shelby County Criminal Court Jury of felony murder and attempted especially aggravated robbery, and was sentenced to life imprisonment plus ten years. On appeal, Haywood argues that he received ineffective assistance of counsel. After review, we affirm the judgment of the post-conviction court dismissing the petition.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

Marty B. McAfee, Memphis, Tennessee, for the Appellant, Carlos Haywood.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Kim R. Helper, Assistant Attorney General; William L.Gibbons, District Attorney General; and Elaine Sanders, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On June 18, 1995, the fifteen-year-old Appellant, armed with a sawed-off shotgun, attempted to carjack the victim, Barry Brodey. Brodey retrieved a handgun from inside his vehicle and aimed it at the Appellant. The Appellant then fired upon Brodey, who was fatally wounded. The next day, Al Pritchard, Appellant's friend for ten years, informed the police of the Appellant's participation in the homicide. Additionally, "Pritchard while on the telephone line with a police detective, called Appellant on a 'three-way' telephone call and discussed the crime while the detective listened." As a result of the information provided by Pritchard, a sawed-off shotgun was found during a search of the Appellant's home.

The Appellant was arrested on June 20, 1995. He was then taken to the police station and questioned. His grandmother, the Appellant's legal guardian, was present at the station during questioning. He first denied any involvement in the crime. According to the Appellant, the detectives then "got heated, started cursing again, and said that you're lying because we found the shotgun in your house. And that's when my – he looked at my grandmother and she just said start telling the truth; they found a shotgun in the house. Don't lie to them; tell the truth." Shortly, thereafter, he confessed.

On January 30, 1996, following his transfer hearing from juvenile court, the Appellant was indicted for felony murder and attempted especially aggravated robbery. After a trial by jury on May 8, 1997, the Appellant was convicted of the indicted offenses. He received a life sentence with the possibility of parole for the homicide conviction and a consecutive twelve-year sentence for the attempted especially aggravated robbery conviction. The Appellant's sentence for attempted especially aggravated robbery was reduced to ten years on direct appeal. *See State v. Haywood*, No. 02C01-9707-CR-00289 (Tenn. Crim. App. 1998 at Jackson, Dec. 11, 1998).

On December 13, 1999, the Appellant filed a *pro se* petition for post-conviction relief. After counsel was appointed to assist the Appellant, an amended petition was filed on March 27, 2000, and a second amended petition on May 8, 2000. An evidentiary hearing was conducted on May 8, 2000, and additional testimony was heard on June 28, 2000. The final amended petition for post-conviction relief was filed on August 31, 2000. On February 20, 2001, the Appellant's petition was dismissed.

## ANALYSIS

In order to succeed on a post-conviction claim, the Appellant bears the burden of showing by clear and convincing evidence, the allegations set forth in his petition. Tenn. Code Ann. § 40-30-210(f) (1997). On appeal, the Appellant addresses four areas of deficient representation:

(1) trial counsel did not properly challenge the circumstances of the [A]ppellant's confession and/or the 'three-way' telephone call in which Appellant incriminated himself,

(2) trial counsel failed to advise Appellant of the proper release date for life imprisonment, preventing Appellant from making a knowing and intelligent decision regarding whether to accept the [S]tate's offer of life with the possibility of parole or go to trial,

(3) trial counsel either failed to do proper investigation or failed to communicate the results of his investigation to Appellant, preventing Appellant from making knowing and intelligent decisions regarding his rights, and

(4) trial counsel failed to include the issues above in Appellant's Motion for New Trial, thereby waiving said issues, and counsel on Appellant's original appeal failed to raise said issues.

To succeed in a challenge for ineffective assistance of counsel, the Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1) deficient representation and (2) prejudice resulting from the deficiency.

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

## A. Suppression of the Confession

The first ineffectiveness issue presented by the Appellant is whether trial counsel failed to "properly challenge the circumstances of the [A]ppellant's confession and/or the 'three-way' telephone call in which [the] Appellant incriminated himself." As articulated by the post-conviction court, the Appellant's suppression argument focuses upon: (1) allegations of police tactics of harassment, coercion, intimidation, etc., which caused excessive fear and psychological and mental suffering to the Appellant in the interrogation room, (2) an alleged illegal "three-way" phone call which was used to intimidate him into confessing, and (3) the fact that the Appellant was only fifteen years old at the time of the crime and did not understand his rights.

### 1. Police tactics of harassment, coercion, intimidation, etc., caused excessive fear and psychological and mental suffering to the Appellant in the interrogation room.

The post-conviction court concluded that the proof failed to establish that the Appellant's confession was obtained as a result of police harassment, coercion, or intimidation. In this regard, the post-conviction court observed that the Appellant's grandmother was present during questioning and did not testify to anything improper occurring. Additionally, trial counsel testified that nothing he learned from the Appellant during their discussions caused him to believe that a voluntariness issue existed. Trial counsel explained:

> We went over that. I went over it with him to make sure that it wasn't coerced, if he felt that he was under some sort of pressure to give a statement. In fact, he said he wasn't. He gave it without anybody coercing him, and with his grandmother there.

There just didn't seem to be any basis, that I could find from talking to him, to contest the validity of the statement he gave.

This court will not reweigh or reevaluate the evidence; nor substitute our inferences for those drawn by the post-conviction judge, unless the preponderance of the evidence is otherwise. *Fields*, 40 S.W.3d at 858; *see also Black*, 794 S.W.2d at 755. Questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are resolved by the post-conviction judge, not this court. *Black*, 794 S.W.2d at 755. We find that the post-conviction court obviously credited the testimony of trial counsel that the facts and circumstances in the Appellant's case simply did not raise a voluntariness issue. Because we do not revisit the issue of credibility on appeal, we defer to the post-conviction court's ruling in that regard. Accordingly, we conclude that this issue is without merit because the evidence does not preponderate against the findings of the post-conviction court.

**2. An illegal "three-way" phone call was used to intimidate him into confessing**.

Specifically, the Appellant argues, "if the telephone call had been suppressed Appellant's confession and the search of his house would have been invalidated as 'fruit of the poisonous tree.'" The post-conviction court noted that "in Tennessee. . . there is nothing illegal about a police officer monitoring a conversation between a non-custodial defendant and a consenting party." The post-conviction court points to *State v. Vanderford*, which reads,

> The Tennessee Supreme Court has held the recording of conversations between a confidential informant and the accused does not violate either the federal or the state constitution. *State v. Jones*, 598 S. W.2d 209, 221-24 (Tenn. 1980). In *Jones*, the agent was wired and the law enforcement officer monitored the conversation between the accused and the confidential agent. The court held these recorded conversations were admissible as evidence.

*State v. Vanderford*, 980 S.W.2d 390, 402 (Tenn. Crim. App. 1997).

We agree with the post-conviction court that it was not illegal for a police officer, under the facts presented, to monitor the conversation between the Appellant and the informant. At the time of the conversation, the adversarial judicial process had not begun, and the Appellant was not in custody. *State v. Huddleston*, 924 S.W.2d 666, 669 (Tenn. 1996) (citing *Michigan v. Jackson*, 475 U.S. 625, 629, 106 S. Ct. 1404, 1407 (1986)). Because monitoring of the telephone call was legal, the Appellant's "fruit of the poisonous tree" argument is meritless.

**3. The Appellant was only fifteen years old at the time of the crime and did not understand his rights.**

To determine the validity of a juvenile's waiver of his constitutional rights, the waiver should be analyzed under a totality-of-the-circumstances test that requires consideration of the following factors: (1) consideration of all circumstances surrounding the interrogation including the juvenile's age, experience, education, and intelligence; (2) the juvenile's capacity to understand the Miranda warnings and the consequences of the waiver; (3) the juvenile's familiarity with Miranda warnings or the ability to read and write in the language used to give Miranda warnings; (4) any intoxication; (5) any mental disease, disorder, or retardation; and (6) the presence of a parent, guardian, or interested adult.

*State v. Callahan*, 979 S.W.2d 577, 583 (Tenn. 1998). In the Appellant's brief, he acknowledges "that he signed the waiver of rights form, but testified that he did not know what it was, and that at the time of his confession he was in 'resource' classes and had been scored with a third grade reading level." The Appellant's grandmother, as previously noted, was present throughout questioning and also signed the waiver of rights form. Additionally, both signed the Appellant's confession, initialing each page. The post-conviction court found that "although [the Appellant] testified at the hearing that he didn't actually read his rights before signing the waiver, he admitted on cross-examination that they were read aloud to him." The Appellant also testified that he was not under the influence of an intoxicant or drug at the time he gave his statement to the police. Trial counsel testified at the post-conviction hearing that the Appellant was "fairly intelligent," and capable of understanding everything that was discussed. The Appellant was also familiar with Miranda warnings, having "been in and out of several juvenile facilities during the two years prior to the murder."

The evidence does not preponderate against the post-conviction court's findings of fact. The post-conviction court, employing the totality-of-the-circumstances test, concluded that the Appellant's waiver was freely and voluntarily given. After a review of the record, we agree.

## B. Proper Release Date

Second, the Appellant contends that trial counsel was ineffective for failing to advise him of the proper release date for a sentence of life imprisonment. As such, he asserts that he was prevented from making a knowing and intelligent decision regarding whether to accept the State's offer of life with possibility of parole or go to trial. At the time the offense was committed, June 18, 1995, those convicted of life sentences were eligible for parole after serving a minimum of twenty-five calendar years in confinement. *See* Tenn. Code Ann. § 40-35-501(h)(1) (1991). On July 1, 1995, the law was amended to provide that those serving life sentences were not eligible for parole for at least fifty-one calendar years. *See* Tenn. Code Ann. § 40-35-501 (i)(1), (2) (1997).

The proof at the post-conviction hearing established that the State offered the Appellant a sentence of life with parole upon the Appellant's plea to first degree murder which would have permitted parole eligibility after twenty-five years. No other plea negotiations were discussed with regard to the remaining charge of attempted especially aggravated robbery. At the post-conviction hearing, the Appellant testified:

Q.  Did you and he [trial counsel] ever talk about negotiating the case?

A.  Yes, sir.  We spoke about – once he told me that the [S]tate had offered me life.  I asked him how much time was life.  He told me it was 50, 51 years or something like that.  He didn't know specific.  He told me that he would get back to me on that. . . .

Q.  Did he ever get back to you on that?

A.  No, sir. . . .

Q.  Did you want to work out the case?

A.  Well, he told me – when he came to me and told me that life was 50, 50-something years and that he would get back to me, that was the only offer that they were offering me; that's what he told me.  I said will they come down with anything else?  He said, no, that's what they offered. . . .

Q.  Would you have taken that offer if it had been possibility of parole after 25 years?

A.  Well, he wasn't – he wouldn't – didn't necessarily explain about lesser time, I would have felt that it would have been under what I had been reading in the jail and what people had been telling me that it would have been after 10 years. . . .

Q.  But if you had understood at the time –

A. Yes, ma'am.

Q.  – what you understand now –

A. Yes, ma'am.

Q.  – that you have the possibility of parole after 25 years, would you have wanted to take that?

A.  Well, I guess – I guess speaking what I would probably understood now what – if I would have understood then what I understood now, I wasn't on that level at that time.  I can't speak about that.

Trial counsel testified,
> We didn't discuss parole eligibility before he was convicted, as I remember.  I'm sure at the time I discussed with him what I knew to be the range for life in prison, or life without the possibility of parole.  Also what I understood the range of punishment was for second degree murder and the lesser offenses of murder.

To satisfy the first prong of *Strickland,* the Appellant in the present case must prove by clear and convincing evidence that trial counsel did in fact erroneously advise him of parole eligibility. *Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). "Once established, the burden still remains on the [A]ppellant to show that but for trial counsel's erroneous advice he would have . . . pled guilty" rather than have proceeded to trial. *Id.; see Hill v. Lockhart*, 474 U.S. 52, 60, 106 S. Ct. 366, 371 (1985). The post-conviction court concluded that the Appellant failed to prove by clear and convincing evidence that he received erroneous advice from trial counsel regarding parole eligibility. Furthermore, the post-conviction court concluded the Appellant failed to show by clear and convincing evidence that but for trial counsel's erroneous advice, he would have pled guilty rather than have proceeded to trial. We defer to the findings of the post-conviction court, and agree that the Appellant has failed to establish that trial counsel was ineffective for failing to advise him of the proper release date for a sentence of life imprisonment.

## C. Failure to Conduct Pre-Trial Investigation

Third, the Appellant contends that trial counsel was ineffective for failing to investigate his case thoroughly and communicate the results of any investigation with him, thereby preventing him from making knowing and intelligent decisions regarding his rights. Specifically, the Appellant asserts that he never saw or received copies of the discovery. The post-conviction court found that trial counsel

> visited [the Appellant] in the jail five times, as well as at each court appearance, when he and the [Appellant] had fairly lengthy discussions, too, in the interview room outside of the court during his court appearances. He also talked to [the Appellant's] step-mother quite a bit about the case, and drove to the federal detention facility in Mason, Tennessee, on August 13, 1996, to discuss the case with [the Appellant's] father, who was serving time there, nine months prior to trial. He was present at a discovery conference with the prosecutor on May 6, 1996, a year prior to trial, at which time he reviewed all the witness statements and physical evidence.

The issue of credibility was resolved in favor of trial counsel. Again, because we will not revisit the issue of credibility on appeal, we defer to the post-conviction court's ruling in that regard. *Id.*

Furthermore, if the claim is based on a failure to properly investigate, then the evidence or witness must be produced so that the post-conviction judge can properly evaluate the evidence or the witness. *See Id.* at 757. The Appellant did not provide any witnesses or evidence to support his assertion that he failed to receive discovery and, even if true, how such failure prevented him from making decisions regarding his rights. There is nothing before us that preponderates against the post-conviction court's findings of fact. This issue is without merit.

## D. Motion for New Trial

Fourth, the Appellant contends that trial counsel failed to include the above grounds of ineffectiveness in the Appellant's motion for new trial, thereby waiving these issues in the direct

appeal of his convictions. We have determined that the grounds asserted by the Appellant in his petition for post-conviction relief are without merit. Therefore, trial counsel was not deficient in failing to preserve these issues for appellate review.

## CONCLUSION

Based upon the foregoing, we conclude that the proof does not preponderate against the thorough and excellent findings of the post-conviction court that the Appellant was not denied the effective assistance of counsel. Accordingly, we find dismissal of the Appellant's petition for post-conviction relief proper. The judgment is affirmed.

_____
DAVID G. HAYES, JUDGE